HENRIETTA ROBB GREGG, Plaintiff, *v.* JOSHUA PERCIVAL GREGG, Defendant.

Supreme Court, New York County, October 26, 1928.

*Guggenheim, Untermyer & Marshall [Edward T. McLaughlin* and *Abraham Shamos* of counsel], for the plaintiff.

*Wise, Whitney & Parker,* for the defendant.

FRANKENTHALER, J. Plaintiff sues for a separation. The answer, to which this motion is addressed, is an amazing document. The defendant husband alleges, by way of defense and counter-claim, that after being divorced from plaintiff in 1911 on the ground of his adultery he " consorted and cohabited with other women " to plaintiff's knowledge; " that at various times between the month of November, 1911, and the month of September, 1920, while visiting in the Republic of France and in the Kingdom of Belgium, defendant met and conversed with plaintiff, and in such conversations informed and advised plaintiff of his manner of life, his income, and his associations with other women; that in the month of September, 1920, plaintiff was fully advised by defendant that from the time she had divorced defendant for the offense of adultery, defendant had continued to cohabit and then was cohab-iting with other women; and plaintiff was fully advised by defendant and well knew that defendant not only had no love for plaintiff, but that plaintiff was physically and otherwise repulsive to defend-ant and was fully advised by defendant that defendant was unemployed and had no property or estate and no earning capacity and was wholly dependent upon a small income of approximately $5,800 per annum derived from spendthrift trusts created by defendant's parents for defendant's benefit; that notwithstanding these facts plaintiff entreated, begged and pleaded with defendant to go through the farce and mockery of remarrying plaintiff, and in response to such entreaties and upon the express agreement by plaintiff with defendant that she would not require defendant to live with, cohabit with, or contribute to the support of plaintiff, and upon the further express agreement that plaintiff would not object to but would consent and permit defendant to continue to cohabit with other women, defendant consented and agreed to go through the mockery of a wedding ceremony with plaintiff; that following the aforesaid immoral arrangement plaintiff and defendant proceeded to the city of Paris in the Republic of France, where, on the 29th day of September, 1920, they went through the form and mockery of a marriage." Defendant goes on to allege that

the parties separated immediately thereafter, defendant leaving for the United States the very next day; that at no time since the marriage have the parties cohabited or has the defendant contributed to the plaintiff's support, and finally that the arrangement was indecent, immoral and contrary to public policy. There can be little doubt that defendant has correctly appraised the character of the agreement upon which he bases his claim that there was in fact no valid remarriage between the parties. In the absence of any allegation as to the laws of France it must be assumed that they are in accord with our own on questions of public policy. In this State the parties to a marriage may not vary or diminish the obligations which the law attaches to the relationship by private agreements between themselves. As was well said by Chief Judge HISCOCK in *Mirizio* v. *Mirizio* (242 N. Y. 74, 83, 84): " Our State as a matter of long-continued policy, by many statutes and innumerable decisions has fixed the status of the marriage contract as a civil contract which when once executed becomes binding and carries with it certain rights, duties and obligations * * *. In my opinion such a course as it is now suggested we ought to set out upon of recognizing modifications of the marriage contract by private agreement would lead to disruption of that contract and disaster in the attempt to enforce it." The parties here concededly went through a marriage ceremony. Any private reservations they may have made in regard to their respective obligations under the marital status which resulted are void and of no effect. To the extent that the allegations referred to form the basis of the counterclaim for annulment it need only be observed that such a counterclaim may not be set up in a separation action. (*Murphy* v. *Murphy*, 194 App. Div. 395; *Ostro* v. *Ostro*, 169 id. 790.) The motion to dismiss the same must, therefore, be granted. It is difficult to determine the theory upon which defendant seeks to employ the same allegations as a defense. If he relies upon the alleged agreement of plaintiff that he need not support her he must fail, for such an agreement is invalid. (Dom. Rel. Law, § 51; *Mirizio* v. *Mirizio, supra; Dennison* v. *Dennison*, 52 Misc. 37.) The inducing causes of the marriage are immaterial. To quote from *Ryan* v. *Ryan* (156 Mo. App. 655): " Some marry to obtain position in society, some to further their ambitious pursuits, others for money, some for the sake of convenience and some for various other reasons, yet, notwithstanding the motive, the law recognizes their validity whatever may have been the superinducing cause. * * * It follows from what has been said that because plaintiff married defendant for convenience solely unmingled with any affection for him whatever, that this can make no difference

as to her rights under the law of the land. ' If defendant stresses the respective incomes of the parties they constitute at most, circumstances to be considered in determining the amount of alimony rather than a complete defense. If he proceeds upon the theory that the allegations of the answer make out a cause of action for annulment and, therefore, constitute a good defense, it is only necessary to point out that it is well settled that a cause of action for annulment is no better as a defense than it is as a counterclaim to an action for separation. (*Murphy* v. *Murphy, supra; Ostro* v. *Ostro, supra.*) If the gist of the defense is that the alleged marriage was in fact no marriage at all, it need only be observed that the allegations of the answer fail to state that the parties had no matrimonial intent. The words " farce," " form " and " mock " merely indicate the pleader's conclusions. Moreover, even if it be assumed that the averments of the defense do sufficiently establish the absence of a contractual intention, that would at most give the defendant the right to maintain an annulment action. Sections 5 and 6 of the Domestic Relations Law, defining void marriages, include only incestuous marriages and those contracted by a person whose husband or wife by a former marriage is living. The " marriage " referred to in the defense is valid until annulled by judicial decree. It follows that the defense is insufficient in law. (*Murphy* v. *Murphy, supra; Ostro* v. *Ostro, supra.*) The motion to strike out the counterclaim and the defense is granted, with ten dollars costs, with leave to defendant to serve an amended answer within ten days on payment of ten dollars additional costs.