Eisenberg, Appellant, *v.* Eisenberg.

Argued March 16, 1932.

Before Trexler, P. J., Keller, Gawthrop, Cunning-
ham, Baldrige, Stadtfeld and Parker, JJ.

*Abraham Wernick* of *Evans and Wernick,* for ap-
pellant.

*Henry Arronson,* and with him *Simon Pearl,* for
appellee.

Opinion by Baldrige, J., May 4, 1932:

This appeal is from a decree dismissing a bill in
equity.

The plaintiff alleged that he and the defendant, a
resident of Philadelphia, were married, November 27,
1928, in Philadelphia; that subsequent to their mar-

riage they lived for a period of six weeks in Collings-
wood, New Jersey, where the plaintiff now resides;
that at the time of the marriage the defendant repre-
sented to him that she was in sound health, when, in
truth, she had been suffering from epilepsy, an in-
curable physical ailment; and that the marriage had
not been confirmed by cohabitation.

The controlling question is: Does the court of equity
have jurisdiction to cancel a fraudulent contract of
marriage? It is admitted by the appellant that courts
of equity in Pennsylvania do not possess general
powers of a court of chancery; their jurisdiction is
confined to the authority conferred upon them by stat-
ute. See Pitcairn v. Pitcairn, 201 Pa. 368; Whyte v.
Faust et al., 281 Pa. 444. We have never had distinct
chancery courts in Pennsylvania, except from 1720 to
1736. For the next one hundred years equity juris-
prudence had no distinct existence. "The necessity
of enforcing equitable principles and remedies led to
various devices whereby they were enforced under
common-law forms, the courts asserting in themselves
substantial powers to be executed in that manner:"
21 C. J. p. 26 (note 11). Under the Act of June 13,
1840, P. L. 666, sec. 39 (17 PS 286), the equity juris-
diction of the court of common pleas of Philadelphia
County was extended to all cases "over which *courts
of chancery entertain jurisdiction* (italics are ours) on
the grounds of fraud, accident, mistake or account."
This jurisdiction was extended under the Act of Feb-
ruary 14, 1857, P. L. 39 (17 PS 283), to all the counties
of the Commonwealth. In England, the courts of
chancery did not have jurisdiction to annul marriages
for fraud. The remedy was confined to an applica-
tion to Parliament to dissolve the marriage, and the
the statute of 1857 (20 & 21 Vict. c. 85), creating the
divorce court, conferred no jurisdiction to annul a mar-
riage for such cause: 9 R. C. L. 293, sec. 61. The

action for annulment was neither an action at law, nor in equity; it was a proceeding sui generis, originally cognizable in the ecclesiastical courts: 38 C. J. 1348, sec. 120. We said in Starr v. Starr, 78 Pa. Superior Ct. 579, 583, "At the time of the establishment of the United States as an independent nation, when the British common law was adopted by the several states, matrimonial causes in England were within the exclusive jurisdiction of the ecclesiastical court. These courts derived their jurisdictional authority from the church, and in the determination of matrimonial causes the canonical law was applied almost entirely. Ecclesiastical courts were not established in any of the United States as a part of its judicial system. Consequently, up to the time of the creation of courts with a jurisdiction in divorce actions, ecclesiastical law relating to divorce remained unadministered for want of a tribunal. We must, therefore, look to the statutes and not to the common law for power to grant divorces." The chancery court's authority not extending to, or embracing, the annulment of marriage contracts on the ground of fraud, and the jurisdiction of the court of equity being no more extensive, it obviously follows that equity courts are without that power. It is true that we stated in Barnhart v. Brown, 86 Pa. Superior Ct. 437, that "a court of equity, in all cases of actual fraud has a concurrent jurisdiction with a court of law in remedying the fraud;" but, of course, that statement was subject to any statutory limitations. This is pointed out in Wagner v. Fehr, 211 Pa. 435, where it was held that fraud, in obtaining an execution of a will, does not come within the jurisdiction of the court of equity.

A considerable number of authorities may be found to support the appellant's contention that the jurisdiction of the court of equity to annul marriages on the ground of fraud rests upon its general power to

vacate contracts in all cases, including contracts of marriage where they have been procured by fraud. The conclusions reached in these cases are based very generally on statutes conferring jurisdiction. See 9 R. C. L. 294, sec. 62; Smith v. Smith, 171 Mass. 404, 50 N. E. 933, 68 A. S. R. 440, 41 L. R. A. 800; Di Lorenzo v. Di Lorenzo, 174 N. Y. 467, 67 N. E. 63, 95 A. S. R. 609, 63 L. R. A. 92. It has been held, however, that the courts of chancery have the power to declare the annulment of marriages, independent of any statute conferring jurisdiction. See Kelly v. Kelly 161 Mass. 111, 36 N. E. 837; 25 L. R. A. 806; Griffin v. Griffin, 47 N. Y. 134; and there are other cases to like effect. But, in this Commonwealth, neither our lawmaking body, nor the courts, has shown any inclination to annul marriages on the ground of fraud. Since the Act of April 14, 1859, P. L. 647, an adequate remedy for the annulment of bigamous marriages has been afforded. The court of common pleas, under the Divorce Act of May 2, 1929, P. L. 1237 (23 PS 10), has expressly been given power to grant divorces when the respondent has procured the marriage by fraud. No radical change was made therein, but the law was clarified and inconsistencies eliminated. While the terms "annulment" and "divorce" are frequently used interchangeably, there is an important distinction. An annulment presupposes the invalidity of the marriage contract; it is void ab initio and is attended with the harsh consequences of rendering children born illegitimate. It is not surprising, therefore, that the legislature has not extended the cause of annulment. A divorce is predicated on a valid marriage and the contract is dissolved from the date of the entry of the decree and the children, are not bastardized. The Divorce Act of 1929 does not recognize a difference between causes existing at the time of the marriage and those arising thereafter, except for bigamy and impotency.

It has generally been recognized that marriage is something more than an ordinary civil contract. It creates a status of vast importance to the social fabric, as well as to the individuals concerned. The rules governing the rescission of an ordinary contract do not obtain in the annulment of a marriage contract; it cannot be dissolved by mutual consent and it is not a contract within the meaning of the statute of frauds: Maynard v. Hill, 125 U. S. 190. Principles are involved, based on vital questions of public policy rather than on abstract contractual rights.

If this appellant had resorted to a divorce proceeding, he would have been required to show that he was a bona fide resident within this Commonwealth for at least one year previous to the filing of his libel. Our courts do not construe the laws in favor of non-residents, where the severance of marital relations is involved, unless the statute clearly so demands: Starr v. Starr, supra. In Pennsylvania, equity will not lend its aid to a violation of the statute, particularly where the statute enforces the well established policy of the Commonwealth. "Whenever the rights or situation of parties are clearly defined and established by law, whether it be common or statutory, equity has no power to change or unsettle those rights or that situation, but in all such instances the maxim, equitas sequitur legem, is strictly applicable:" Scott et al. v. Waynesburg Brewing Co., 256 Pa. 158, 162. See also Middleton v. Middleton, 187 Pa. 612. As is said in 21 C. J. 40, sec. 14, "Of course, when the law, out of consideration of public policy, denies a remedy, equity cannot grant one. The defect of remedy which will support a resort to equity must lie in the legal remedy and not in the legal policy."

It is unnecessary, in the disposition of this appeal, to discuss the question whether the grounds set forth

amounted to fraud. Suffice to state that after a careful consideration of this record, we find no error therein.

Order of the learned court below is affirmed.