## Bapa v. Bapa

*Bert H. Smyers* and *B. H. Smyers, Jr.*, for libellant.
*Martin Silverman*, for respondent.

BOOSE, P. J., sixteenth judicial district, specially presiding, August 27, 1934. —This is an action in divorce from the bonds of matrimony. The libel originally alleged four grounds: (1) The libellant and respondent are kin of the degree of first cousins; (2) indignities to the person; (3) cruel and barbarous treatment; and (4) adultery. By a subsequent stipulation and order of court, the libel was amended so as to strike out and eliminate therefrom the last three grounds, leaving the action as it now stands resting upon the first allegation only. From the testimony, we make the following material and controlling:

### Findings of fact

1. The libellant, Michael Bapa, and the respondent, Sadie Bapa, whose maiden name was Sadie Kusic, or Kusik, are first cousins; his father and her mother having been brother and sister.

2. In pursuance of a marriage license, dated March 2, 1923, issued by the Register of Wills of Allegheny County, a marriage was contracted and celebrated between the libellant and the respondent on March 8, 1923, in the City

of Pittsburgh, in the county aforesaid, the marriage ceremony being performed by the Rev. Daniel F. Gorrss.

3. Thereafter, the parties cohabited as husband and wife for a period of approximately 11 years, until the wife withdrew from the husband's home. They are now living separate and apart. No children have been born as the result of this union.

4. The libellant has been a bona fide resident of the County of Allegheny and this Commonwealth for more than 1 whole year previous to the filing of his petition or libel. His present residence is now 2229 Wenzel Avenue, Beechwood, in the City of Pittsburgh.

5. The present residence of the respondent is with her mother on Graphic Avenue, in the same city.

## Discussion

This case presents no complications, either jurisdictional or on the merits. The facts are not in dispute, and the law applicable thereto is clear. The libellant's cause of action is grounded upon paragraph 2, sec. 10, of The Divorce Law of May 2, 1929, P. L. 1237, which provides:

"When a marriage has been heretofore, or shall hereafter be, contracted and celebrated between two persons within the prohibited degrees of consanguinity or affinity, according to the tables established by law, it shall be lawful for either of said parties to obtain a divorce from the bond of matrimony, in the manner hereinafter provided".

The prohibited degrees of consanguinity, so far as concerns the present case, are defined by the Act of June 24, 1901, P. L. 597. It reads:

"Sec. 1. That from and after the first day of January, Anno Domini one thousand nine hundred and two, it shall be unlawful for any male person and female person, who are of kin of the degree of first cousins, to be joined in marriage.

"Sec. 2. All marriages contracted in violation of the provisions of the first section of this act are hereby declared void."

It being admitted by both the libellant and the respondent that they are first cousins, the law must be declared and followed as defined by the statutes and construed by the courts. Since the passage of the Act of June 24, 1901, P. L. 597, marriage of first cousins is unlawful and void: McClain v. McClain, 40 Pa. Superior Ct. 248. Such a marriage, since the act, is not only voidable but void, and the courts have power to decree a divorce: Faust v. Faust, 44 Pa. C. C. 314; Duchi v. Duchi, 11 D. & C. 610. The case of Schofield v. Schofield (No. 1), 51 Pa. Superior Ct. 564, may possibly be regarded as overruling the dicta of McClain v. McClain, supra, declaring the relationship following a marriage between first cousins to be incestuous, but it clearly holds that a marriage between first cousins, if not unlawful at the place where celebrated, is not unlawful in this State, or even if celebrated in this State prior to the effective date of the Act of 1901, but prohibits the celebration of such a marriage in Pennsylvania thereafter: Weiss v. Weiss, 8 D. & C. 534.

It is earnestly urged and contended by respondent's counsel that we should find as a fact and hold as a matter of law that the marriage in question was procured and brought about through the fraud of the libellant; and that the law should leave them in the status which they voluntarily created for themselves. With this contention we cannot agree. Libellant and respondent are natives of Tripoli, Syria. They knew they were of kin to the degree of first cousins. They may have been ignorant or uninformed that a marriage between

them was forbidden under the law of Pennsylvania, but this does not excuse or legalize an unlawful marriage: Knopf v. Knopf, 21 Del. Co. 551. The Divorce Law of 1929 does not require that the libellant must be the "innocent and injured" spouse in order to entitle him to have this unlawful marriage dissolved. Either party is entitled to relief from this unlawful marital relation: McClain v. McClain, 40 Pa. Superior Ct. 248. If the law were otherwise, the prohibitory provisions of the Act of 1901 could be defeated, simply by having one of the parties say he or she was ignorant of the law, and that therefore the other must continue in this unlawful relation.

"The marital relationship of the libellant with the respondent cannot be continued lawfully, and the policy of the law should be to permit them to undo the wrong committed": McClain v. McClain, supra.

The further argument and contention has been urged that the libellant cannot take advantage of his own wrong; that divorce is a proceeding in equity; that, therefore, equitable principles and maxims must control; and that the court should be restrained from dissolving this unlawful marital relationship. Plausible as this argument may be, it is in no way material to the issue involved in this proceeding. We have before us a single narrow issue. Admittedly, the parties were of kin of degree of first cousins, at the time the marriage was contracted and celebrated; and it must therefore be further admitted that this marriage was unlawful and void. Nothing that the parties did, either before or after the marriage ceremony was performed, can put life or legality into that unlawful relationship. It is probably true that, prior to the Act of 1929, the appropriate and proper remedy would have been a proceeding to annul the marriage, rather than to obtain a divorce from the bond of matrimony. This change in the law and procedure has been rather significantly pointed out in Eisenberg v. Eisenberg, 105 Pa. Superior Ct. 30, 34, where Baldrige, J., in delivering the opinion of the court, said:

"The court of common pleas, under the Divorce Act of May 2, 1929, P. L. 1237 (23 PS 10), has expressly been given power to grant divorces when the respondent has procured the marriage by fraud. No radical change was made therein, but the law was clarified and inconsistencies eliminated. While the terms 'annulment' and 'divorce' are frequently used interchangeably, there is an important distinction. An annulment presupposes the invalidity of the marriage contract; it is void ab initio and is attended with the harsh consequences of rendering children born illegitimate. It is not surprising, therefore, that the legislature has not extended the cause of annulment. A divorce is predicated on a valid marriage and the contract is dissolved from the date of the entry of the decree and the children are not bastardized. The Divorce Act of 1929 does not recognize a difference between causes existing at the time of the marriage and those arising thereafter, except for bigamy [and impotency]."

The last words of the court's language, embraced in brackets, we think, were inadvertently used, as the Act of 1929 makes no provision for annulment of a marriage on the ground of impotency. This has been made a ground under said act, section 10, paragraph 1 (a), at the suit of the innocent and injured spouse, for the granting of a divorce from the bonds of matrimony, but not for annulment of the marriage. This case also negatives the contention of respondent's counsel that the powers of a court of equity should control.

By applying the law to the undisputed findings of fact, we arrive at the following

### Conclusions of law

1. The marriage contracted and celebrated between the libellant and the respondent was, and is, illegal, null, and void.

2. The court has jurisdiction of the parties and the subject matter.

3. There has been no collusion, connivance, or levity between the parties to this action.

4. The libellant is entitled to a divorce.

Accompanying the trial of this case upon the merits, we have also the respondent's petition for additional counsel fees and expenses incident to the trial. The libellant has filed a responsive answer. We are not familiar with what transpired between the filing of the libel, answer, and trial of the case. Neither are we familiar with the practice and procedure in cases of this kind under the rules of court. We have passed upon the merits of the case, but decline to act upon this matter. It should be passed upon by the president judge of the court or one of its members.