## Osgood v. Moore

*Thomas F. Murphy*, for libellant.

CRICHTON, P. J., April 22, 1940.—On August 9, 1939, Charles Osgood filed this petition, averring that on or about July 7, 1936, at Mansfield, Tioga County, Pa., petitioner and respondent, Elizabeth Moore, also known as Elizabeth Osgood, appeared together in a ceremony purporting to be a ceremony of marriage; that prior to said ceremony respondent had represented to petitioner that he was the father of her unborn child, and threatened that

if he did not marry her she would prefer charges against him, and also that she would commit suicide; that an agreement was reached between the two to the effect that in order to give a name to the unborn child petitioner and respondent would go through a ceremony of marriage, with the distinct understanding, however, that said ceremony was not to be effectual to make them man and wife; that it was not to be consummated, and that they were not to live together thereafter as man and wife; and that in pursuance of said agreement they went through the above-mentioned ceremony, but have never lived together as husband and wife, and in fact immediately upon the performance of the ceremony went to the homes of their respective parents and continued to live with them up to the date of the filing of the petition. Averring, therefore, that the pretended marriage was null and void, the petition prayed the court to enter a decree so declaring.

No appearance or answer was filed by respondent, although personal service was had on her on August 12, 1939. The matter was so proceeded with, therefore, that a master was appointed to hear the testimony and to report to the court with his recommendations. Said report was filed January 29, 1940, and confirmed nisi on the same day. Thereafter, to wit, on February 16, 1940, and before final confirmation, exceptions to the master's report were filed. These exceptions, taken generally, raised the question as to the validity of the master's conclusion that, under the facts found, no decree of annulment can be made, but that if there was fraud, force, or coercion the remedy of petitioner is by libel in divorce and not by petition for annulment.

## Facts

The master found upon sufficient testimony that petitioner and respondent first met in September 1935, when petitioner was 18 years of age and respondent 16 years of age; that they kept company with each other from that

time until March 1936, during which time they had intercourse on more than one occasion; that in March 1936, respondent admitted to petitioner that she had had intimate relations with other boys; that as a result of this admission he put an end to his association with her; that sometime after March 1936, respondent's parents called petitioner to Corning, N. Y., where the former lived, and informed him that their daughter was pregnant and asked him what he was going to do about it; that the latter replied that he would like to have time to think it over; that subsequently the parties, with their parents, met at the office of the district attorney in Wellsboro, Pa., where it was agreed between the parties, with the apparent approval of their parents, that they would go through the marriage ceremony in order to give the unborn child a name, but that they would not live together or treat the ceremony as a real marriage; that in pursuance of this arrangement the parties met, together with their parents, in front of the courthouse in Wellsboro and agreed to go to Mansfield, Pa., to have the ceremony performed; that they did so, petitioner riding with his father and respondent with her parents; that at Mansfield the ceremony was performed, when they immediately separated and have lived separately ever since and without cohabitation, and that the child was born about January 1937, of which petitioner denies the parentage. In view of the finding warranted by the evidence that petitioner had no sexual relations with respondent after March 1936, the master's statement that this child was born of the marriage is of doubtful authority, but it is not necessary for us to determine what the fact in that respect is.

### Discussion

We are of the opinion that the facts shown are insufficient to warrant the conclusion that petitioner took part in the marriage ceremony under coercion or as the result of fraud. If they did, petitioner's remedy would

be by way of an action for divorce rather than for annulment, since The Divorce Law of May 2, 1929, P. L. 1237, sec. 10, 23 PS. §10, specifically provides for that procedure in such case. But the learned master's conclusion, it seems to us, overlooks the very vital issue as to whether any agreement of marriage was actually entered upon. The findings of fact in this regard are to the effect that the ceremony was performed upon the understanding that it was not to be consummated by future cohabitation and was not to be a valid marriage, but was to be ostensible only, and for the sole purpose of giving a name to the child about to be born, of which child petitioner did not admit the parentage. That such was the agreement is amply shown by the evidence not only as to prior conversations and stipulations, but also as to their subsequent conduct. It is our opinion, therefore, that no valid marriage took place. It is true that the contract of marriage differs from other contracts in that society has a vital interest therein, as our courts have frequently pointed out. But we have yet to be cited a case going so far as to say that where the parties have entered into an agreement that the ceremony shall not constitute a marriage, and have carried out the agreement to the extent of living apart from the moment of the ceremony and of failing to cohabit, the State still holds them to the undertakings of the ritual rather than to their explicit contract confirmed by their subsequent conduct. While our Pennsylvania statutes and rules have carefully guarded the marriage contract and have frowned upon frivolous grounds for divorce or annulment, they have never departed from the proposition, practically unanimous in the States, that mutual consent and bona fide agreement of the parties, freely given and with the intention of entering into the valid state of wedlock, are fundamental and essential elements, without which the marriage is invalid unless consummated by cohabitation. This principle we must adhere to, even though we condemn the action of the parties in making a

farce of what should be a solemn covenant. Since there was no agreement to enter into the relationship there was no marriage. Marriage is a civil contract by which a man and a woman agree to take each other for husband and wife during their joint lives, unless it is annulled by law. Each must be capable of assenting and each must in fact consent to form the relationship: Stevenson's Estate, 272 Pa. 291.

It is interesting to note the paucity of decisions in Pennsylvania bearing upon the question of the invalidity of marriage by reason of lack of consent of the parties; and it is even more interesting to pursue the reason for this. A study of the history of our divorce and annulment laws is revealing. A court of equity in Pennsylvania has no power to decree an annulment or divorce, and the jurisdiction of our courts of law with reference thereto depends exclusively upon statutory authority: Eisenberg v. Eisenberg, 105 Pa. Superior Ct. 30. Our legislature, very properly, has been exceedingly chary in granting to courts the power to annul. For very many years even a bigamous marriage could not be annulled, the only remedy being by way of divorce. The Act of 1705, 1 Sm. L. 26, made void incestuous marriages, but provided not for annulment, but for divorce. Likewise it appears that from the passage of the "Act against Bigamy," of 1705, 1 Sm. L. 29, the statutes declared such marriages void, but provided no method for the issuance of a decree of annulment until the enactment of April 14, 1859, P. L. 647, which authorized such decree. Thus it seems that until the passage of the Act of July 15, 1935, P. L. 1013, sec. 1, 23 PS. §12, amending The Divorce Law, supra, only one ground for annulment existed, to wit, a prior and existing marriage, although certain other marriages had by statute been declared void. Even The Divorce Law of May 2, 1929, P. L. 1237, provided for annulment in the case of bigamous marriages only, and provided for divorce only in other instances in which other jurisdictions recognized the marriage as void, and

authorized annulment—such as impotency at the time of the contract, fraud and coercion and incest, the last mentioned recognized even in our own statutes as voiding the marriage. In other words, the legislature until 1935, while in no way attempting to alter the general principles governing the contract of marriage, declined to allow a decree of annulment except in the one instance of bigamous marriage, and either substituted therefor a divorce, or refused to provide any remedy, leaving to the courts only the power, which the latter assumed, to declare the status of an alleged marriage in a collateral proceeding usually affecting property rights. But the Act of 1935, supra, finally recognized specifically the existence of so-called marriages void for other causes than bigamy. It provided as follows:

"In all cases where a supposed or alleged marriage shall have been contracted, which is absolutely void by reason of one of the parties thereto having a spouse living at the time of the supposed or alleged marriage, or, if, for any other lawful reason, the said supposed or alleged marriage was absolutely void when contracted, such supposed or alleged marriage, may, upon the application of either party, be declared null and void, in accord with the principles and forms hereinafter prescribed for cases of divorce from the bond of matrimony."

We do not doubt that a bald ceremony, without agreement or intent to marry and without consummation, as was the ceremony in the case at bar, is void; and the Act of 1935 supplies the remedy by annulment.

## Decree

Now, April 22, 1940, the exceptions are sustained so far as they relate to the master's conclusion that a decree of annulment may not issue, which conclusion is overruled, and the pretended marriage of July 7, 1936, between Charles Osgood and Elizabeth Moore, also known as Elizabeth Osgood, is decreed and declared to be null and void and of no effect.