## Wagner v. Wagner

*Walter A. Herley*, for petitioner.
*L. K. W. Deininger*, for respondent.

WINDLE, P. J., March 17, 1947.—Petitioner seeks an annulment of his "purported" marriage with respondent on the ground that said marriage was void when contracted because of an agreement theretofore entered into by and between petitioner and respondent and the failure to consummate the marriage by cohabitation in accordance with the terms of said agreement. The master and examiner found the marriage was void

and recommended that it be annulled as prayed. We do not agree with him.

In accordance with the duty which devolves upon us in cases of this character—there is no difference in that regard between applications for divorce and annulment: Fitzpatrick v. Miller, 129 Pa. Superior Ct. 324, 330—we have carefully read and examined the testimony introduced at the hearing and have reached our own independent judgment thereon, giving full consideration to the report of the master, who heard and saw the witnesses but realizing that it does not come into court with any preponderating weight or authority.

"While the Master's report is entitled to the fullest consideration because of his personal contact with the witnesses, nevertheless the court of common pleas must still be satisfied by its own knowledge of the testimony that the averments of the libel have been proved by full and competent evidence before the decree can be granted": Rinoldo v. Rinoldo, 125 Pa. Superior Ct. 323, 327.

Having so considered the evidence and the master's report we have concluded that petitioner has not established his right to an annulment by clear and satisfactory proofs upon which the decision of the court may be confidently rested, as is required: Detz v. Detz, 145 Pa. Superior Ct. 136.

Petitioner testified that he knew respondent from having been in the same class in high school with her in Clearfield County where their families both lived about eight miles apart; that they graduated there in 1938 and both went on to an "undergraduate center" in Dubois for two years; that he went from there to State College but respondent did not; that there he met Martha Pease, who lived in the Borough of State College, in January 1942 (that date is supplied by Martha Pease) and "kept company" with her and they became engaged to be married; that after his graduation from State College in May 1942 he came to Chester County to live near his place of employment, Lukens

Steel Company, in Coatesville; that when he told respondent of his engagement to Martha Pease the former told him that she was pregnant by him, wherefore they agreed to get married but not live together as husband and wife and, after the child was born, to get a divorce; that pursuant thereto they went to Elkton, Md., twice, once to make application for a marriage license and again to receive the license and get married, as they in fact did by a minister of the gospel; that they did not cohabit as husband wife but returned to their respective places of residence after having dinner together; that about two months later respondent telephoned him that there was to be no baby, intimating that she had had a miscarriage; and that he has not since talked to or seen respondent.

Counsel for petitioner states orally, at argument, and in his brief, that petitioner and respondent agreed "to go through a marriage ceremony" but not to live together as husband and wife, wherefore, he argues, they entertained no intent to get married and consequently their alleged marriage should be annulled. Petitioner's testimony, however—that of his witness, Martha Pease, as to any agreement between petitioner and Clara Smith is hearsay and therefore incompetent and of no probative value here but is to exactly the same effect as petitioner's—does not support that premise as stated. He testified that "We decided to get married until after the child was born and then get a divorce." Nowhere does he say that they agreed or intended merely "to go through a marriage ceremony". And the very purpose for which they did what they did, to wit, to render their unborn child legitimate and "give it a name", i. e., petitioner's name, negatives the idea that they contemplated anything but a valid, binding marriage—anything less would not accomplish that purpose. It cannot therefore be concluded, even if we accept petitioner's testimony as verity, that petitioner and respondent intended to enter into any-

thing but a valid marriage and that their marriage was of any different nature.

In addition, even if petitioner had testified, as counsel assumes he did, or if it be argued that from his testimony as given it may be inferred that there was an agreement merely to "go through a marriage ceremony" rather than "get married", we are not inclined or willing to accept petitioner's testimony as "clear and satisfactory proof" to that effect upon which the judgment of annulment by this court can be "confidently rested". He asks us to believe that at a time when he was "keeping company" with Martha Pease in a fashion which culminated in their engagement—or possibly, as far as appears in the testimony, while he was in fact engaged to her—he had sexual intercourse with respondent whom he had known for several years while they were classmates in school together and whom he had "gone with"; that when he told respondent of his engagement to Martha Pease the former informed him that she was pregnant by him and that although he realized that the pregnancy would have been five or six months old he saw no physical manifestations thereof in her. (If the date of that exchange of information was July 1942, as may be so from Martha Pease's testimony that she received a letter from petitioner in that month saying that he was in a little difficulty, which she now attributes to the situation involving Clara Smith, then respondent must have been seven or eight months pregnant in September 1942, when the marriage was entered into, and still petitioner says he saw no sign of her pregnancy! And two months later she telephoned him that there was to be no baby, intimating that she had had a miscarriage! If such exchange were later than July, even as late as September, is it probable that she would show no appearance thereof even then and that she would have a "miscarriage" at seven or eight months? He further wishes us to believe that although he had illicit sexual relations with

respondent while, to say the least, he was interested in Martha Pease he had no sexual intercourse with her at a time when it was no longer illicit for him to do so. While we ordinarily hesitate to disagree with a master on questions of credibility of witnesses—whom he has observed while testifying whereas we have not—yet here considering the interest this petitioner has in the outcome of this proceeding—it is a fair inference, from her presence as a witness on behalf of petitioner at the hearing before the master, that he and Martha Pease are contemplating marriage regardless of the sordid situation—and the probabilities, or rather the improbabilities, in the story he tells we cannot accept his testimony as meeting the standard of proof here required. Why should his testimony before the master be taken as verity and his statements before the minister at the time of the marriage ceremony be entirely disregarded and disbelieved? The latter were uttered under conditions no less solemn or binding than the former. The marriage vow is entitled to no less consideration or weight than testimony delivered under oath. When should we believe him? In 1942 or in 1946? Why at one time or on one occasion more than the other?

Akin to the thought immediately above expressed is the opinion we entertain that petitioner is estopped from testifying as he did as to his marriage with respondent and that for that reason, if for no other, he has not made out a cause. We cannot believe that the law permits him in 1946 to deny the solemn obligation of marriage entered into in unequivocal terms in 1942, and to say that he did not mean what he said when, "in the sight of God", he promised to take respondent as his wife. Surely the principal of estoppel in pais operates to close his mouth in that regard, if not at the instance of respondent then at the instance of the third party to every marriage, the State.

Petition denied.