## L. v. L.

*S. U. Colbassani*, for libellant.

*Ernest D. Prèate*, for respondent.

HOBAN, P. J., June 29, 1948.—This is an action to annul an alleged void marriage. Libellant's theory is that the marriage was brought about by fraud, force and coercion. The fraud consisted in an unfounded accusation of rape, and the alleged force and coercion was the threat of prosecution on the rape charge, in the face of which libellant consented to marry respondent, who was then pregnant, but with no intention thereafter to cohabit, and that in fact there was no such cohabitation and immediately after the ceremony a separation agreement was signed. In due course respondent gave birth to a child and the practical effect of these proceedings, if the annulment is allowed, would be to bastardize the child and relieve libellant from any responsibility for its support, since an annul-

ment declares that the marriage was void from the beginning.

There is little dispute about the basic facts. Libellant and respondent met around Labor Day in 1946. He claims that between that time and sometime in January 1947 he had intercourse with respondent on five separate occasions and that the intercourse was voluntary. Respondent claims that she had intercourse with him only once, on January 16, 1947, and that such intercourse was accomplished by force. She says libellant took her out in an automobile, pushed her and slapped her, that she was almost semi-unconscious when the rape occurred. In April 1947 respondent suspected pregnancy and accused libellant of responsibility. At the suggestion of friends both parties went to a doctor. The doctor was unable to make an accurate diagnosis on the first visit. They returned to him a week later and the pregnancy was confirmed. Marriage was suggested by their friends and the parties submitted to blood tests. At the same time libellant suggested an abortion, which the doctor promptly refused to perform, the idea of which was also rejected by respondent. When the report of the blood tests were obtained, libellant tore them up and announced his refusal to marry respondent. Thereupon she made an information on the rape charge, libellant was arrested and brought before an alderman as committing magistrate.. Both libellant and respondent appeared for the hearing and were each represented by counsel. As a result of discussions, and with the acquiescence of the magistrate, marriage was agreed upon and the parties were married by the magistrate on April 30, 1947. Then the parties signed a separation agreement, the gist of which was that they agreed to live separate and apart from each other during their natural lives, neither one to interfere with the other, and libellant

agreed to pay to respondent the sum of $50 a month, beginning at the time that she would have to cease work at her then occupation, and libellant also agreed to pay medical expenses and all other lying-in expenses incident "to the birth of their expected child". At the time of the meeting in the magistrate's office, counsel for libellant explained to him the meaning of the charge of rape and the possible penalties in case of conviction. There is utterly no evidence of any sort of threats by physical force or violence by anybody connected with the case. The evidence of duress and coercion, if any, is to be found solely in libellant's fear of the penalties attached to a successful prosecution for rape.

In my opinion there is no evidence here which would warrant holding that the marriage was accomplished by any means other than the free choice and consent of libellant. Undoubtedly he had cause to fear a prosecution, for by his own testimony he is guilty of fornication at least, and if the same evidence as introduced in this annulment action were presented in a paternity suit, there is no question but that libellant would be adjudged to be the father of respondent's child.

Libellant's counsel argued vigorously that the story of the attempted rape as given by respondent was incredible. If there is any incredibility to the testimony, it would seem to me to be on the part of libellant himself, who insisted that he was not the father of the child, in spite of his admissions of repeated intimacies.

A similar situation has been considered by President Judge Bok, of Philadelphia, in Bove, etc., v. Pinciotti, 46 D. & C. 159. While there is divided opinion about the matter and there is no appellate court precedent, I agree with the reasoning of Judge Bok, who held that a marriage under such a situation and performed for the purpose of legitimatizing the child, even though

394

there is no apparent intent on the part of the parties to give any further effect to the marriage, offers no reason for annulment. The following quotation from Judge Bok's opinion is illuminating:

"It should be remarked in passing that release from marriage would be made easy if it were possible for the parties to assert successfully that they never intended to be really married in the first place. To let them out by annulment on such grounds would, through the bastardization of issue, have pernicious effects. We cannot believe that the legislature intended any such consequence. Indeed, the policy of the common law against allowing parents to bastardize their issue prevents us from holding that a marriage is void, in a case where a child has been born, upon the mere statement of the parties that they never intended really to marry. If we cannot give legal effect to the actual situation with regard to parentage, a fortiori we cannot give effect to what was in the parties' minds with regard to a marriage preceding the child's birth. The general language of the Act of 1935 cannot be interpreted to make such a radical change in the law."

Fear of punishment if convicted of a serious crime cannot in itself be considered duress. I find no grounds in the testimony to reject respondent's testimony and accept that of libellant as to the rape. If a jury had convicted libellant of rape on the testimony as presented in this case, I would have to sustain the conviction. Obviously, I cannot hold that there was duress unless I do find that the accusation was unfounded. Nor can I say that there was duress when libellant was fully informed of his right to enter bail, and defend his case through the processes of the criminal courts. If he chose not to accept the risk, the choice was free, and likewise so was his consent to the marriage.

The generally held opinion seems to be that fraud itself does not make a marriage void but at the most voidable, and our Divorce Law provides that on a showing of fraud a divorce may be obtained. See Eisenberg v. Eisenberg, 105 Pa. Superior Ct. 30. The burden of proving that the marriage was void for any legal reason is upon libellant. In my opinion he has not maintained this burden and his action must be dismissed.

Now, June 29, 1948, the libel is dismissed at the cost of libellant.