LINDA SHEILS, Appellant, *v.* J. STEPHEN SHEILS, Respondent.

First Department, June 24, 1969.

*Sybil Hart Kooper* of counsel (*Kooper & Kooper*, attorneys), for appellant.

*William T. Griffin* for respondent.

McGIVERN, J. On September 7, 1967, a daughter was born to the parties herein. They had, it seems, been acquaintances for many years; in latter years, the acquaintanceship became a liaison. Linda, the plaintiff, was most anxious that the child be legitimitized by a marriage. He was a young law clerk, not yet admitted to the Bar. He preferred the child be surrendered for adoption. For a time they lived together and he supported mother and child, sporadically. At no time did he deny paternity. And Linda did not institute paternity proceedings.

Come January 4, 1968, and Linda, without legal advice, signed a letter purportedly prepared by Stephen himself, wherein he undertook to marry her *provided* she recognized that the marriage would be one in name only, that immediately after the ceremony she would sign a separation agreement waiving all claims of support and give to him a power of attorney authorizing a Mexican divorce.

On January 24, 1968, the twain were joined in matrimony by a Justice of the Supreme Court of the State of New York. One hour later, Linda, still without an attorney, although one had been suggested, signed a separation agreement, incorporating the essentials of the letter of January 4 (*supra*), together with the power of attorney, documents which had been prepared before the ceremony by the husband's attorney. On January 29, 1969, the marriage was dissolved, at the instance of the husband, in the heroic City of Juarez, Bravos District, State of Chihuahua, Mexico.

Now, the plaintiff wife brings before the court her complaint seeking to have the separation agreement and divorce declared null and void. In her complaint, and for our present purposes, we must assume her allegations to be true, she alleges that at the time of her signing she was debilitated, indigent, nervous, hysterical, her signing was " not the free voluntary, and responsible act of plaintiff ", that she was " forced " to sign by defendant, who otherwise would not marry her and her daughter would remain illegitimate; and that, *inter alia*, " at the persuasion and duress of the defendant and his attorney " she " forfeited any and all support for herself ". Special Term has dismissed her complaint. We do not agree.

We have before us a presumably valid marriage. It was not a mock ceremony, nor one performed as a jest, or on a dare. The parties knew the ceremony was real, of record, officiated by a State functionary, indeed, a Justice of the Supreme Court. Their motives were not ignoble, the legitimization of their child, actually one of the purposes of marriage. And once the deed was done, the State stepped in, the third party to the mar-

riage. They were no longer free to determine for themselves the essentials of their contract, which flow innately from it. For the marriage contract, once performed, had achieved a status, in which society had an interest; *ipso facto*, relationships had been created, which the parties cannot dissolve by prearrangement. The husband cannot now say he was "playacting" and by his legal clairvoyance anticipate the effect of an annulment; an annulment at least recognizes the subsisting validity of a marriage. In fact, he himself recognized the validity of the marriage by submitting it to a foreign jurisdiction as a valid one, and seeking its dissolution solely on the grounds of incompatibility of temperament.

We believe the complaint of the wife is well taken and within the scope of the complaint in *Pomerance* v. *Pomerance* (301 N. Y. 254). She does not attack the marriage, qua marriage, nor claim she was coerced into it, only that she was coerced and duped into signing the separation agreement and the power of attorney, executed concomitantly with the marriage and purporting to undo the intrinsic results of the marriage ceremony. We think she should have an opportunity to demonstrate her position. For if she is correct, it may be the agreement and her appearance in Mexico are properly subject to attack for fraud, duress or overreaching. (*Harges* v. *Harges*, 46 Misc 2d 994.)

It is difficult, on these affidavits alone, to appreciate the husband's position. He undertook by his letter antedating the marriage, to dissolve the marriage and liberate himself from the inherent obligations of it even before the event. And contemporaneously with the marriage, in documents prepared by his lawyer, at his instance, his wife signed, she says not freely, an express agreement requiring the dissolution of the marriage. Having a valid marriage, such conduct and acts appear to be within the condemnation of section 5.311 of the General Obligations Law (as amd. by L. 1966, ch. 254, § 12) repugnant to public policy and antithetical to the tenor of a long line of precedents, some set forth by Judges the most eminent: *Anonymous* v. *Anonymous* (49 N. Y. S. 2d 314 [SHIENTAG, J.]), *Gregg* v. *Gregg* (133 Misc. 109 [FRANKENTHALER, J.] and *Kershner* v. *Kershner* (244 App. Div. 34 [MARTIN, P. J.]). To the same effect, Foster-Freed, Law and the Family, N. Y., vol. 1, § 2:6, p. 17): "However, where the parties have consented to the marriage they may not thereafter contend that they merely entered into it as a matter of form, such as for the purpose of legitimizing a child born out of wedlock, or to protect the girl's name." (Citing, *Delfino* v. *Delfino,* 35 N. Y. S. 2d 693, and

*Erickson* v. *Erickson,* 48 N. Y. S. 2d 588.) In the latter case, plaintiff was denied an annulment even though the parties never cohabited after the ceremony .

A word as to some of the cases adverted to by the minority opinion: In *Amsden* v. *Amsden* (202 Misc. 391) the defendant wife withdrew her answer and did not oppose. In *Wagner* v. *Wagner* (59 Pa. D. & C. 90), the court emphatically made it clear that the very purpose of the parties, the legitimization of a child, negatived any idea they contemplated anything but a valid and a binding marriage. And the petition was denied.

In any event, a question of such far-reaching consequence and of such potential mischief as a precedent, should not be determined upon conflicting affidavits. (*Yunis* v. *Yunis,* 286 App. Div. 1126; *Sullivan* v. *Sullivan,* 285 App. Div. 967; *Botway* v. *Botway,* 273 App. Div. 948; *Rosenblatt* v. *Rosenblatt,* 209 App. Div. 373; *Moat* v. *Moat,* 27 A D 2d 895.)

We would reverse the disposition of Special Term on the law and deny the motion, without costs.

STEUER, J. (dissenting). We dissent and would affirm the determination of Special Term dismissing the complaint.

The action seeks a declaratory judgment declaring that a separation agreement and a decree of divorce be declared null and void. It appears without contradiction that for some time prior to the marriage the parties had cohabited and a child was born of their union. Defendant acknowledged paternity and provided support for the child which was both ample and satisfactory to plaintiff. Defendant consistently refused to consider marriage upon the ground that the absence of any appropriate regard between the parties for each other would preclude a satisfactory relationship. However, he finally yielded to importunities to legitimatize their offspring by going through a ceremony. It is quite clear that defendant consented only upon condition the marriage so contracted would be terminated immediately by divorce and that plaintiff would neither acquire nor seek any property rights or support. Continued support of the child was not affected. All of these terms were embodied in the separation agreement and explained in a letter which plaintiff received and understood. She signed the separation agreement and authorized an appearance in the divorce proceedings.

The allegation of the complaint is that plaintiff executed the agreement under duress. This, of course, is nonsense. It is undeniable that the marriage was at her solicitation and that she consented to the terms because that was the only way in which she could bring this about. Clearly, defendant was not

desirous of having her execute the agreement and would have been more satisfied had she refused and the marriage had been forgone. As the alleged duress is the refusal otherwise to marry — which the defendant could legally refuse to do — there is no duress (*Harges* v. *Harges,* 46 Misc 2d 994). Under these facts, which are not in contention, duress is not a factor.

There is one other contention which has been introduced into the case which is of no significance. Defendant consulted a lawyer who also spoke to plaintiff and who drew the separation agreement. He advised her to consult an attorney of her choice, which she did not do. While there may possibly be some question of taste as to the same lawyer representing the defendant in this action, it can have no possible bearing on the outcome.

The only real issue in the action is one of law — whether the agreement is void as a matter of law. There is very little relevant authority in this State. Actions involving fraudulent or overreaching separation agreements between spouses already married and living together (cf. *Pomerance* v. *Pomerance,* 301 N. Y. 254) have no bearing. Nor do cases involving the claimed immutability of support provisions in a separation agreement after a change in conditions (cf. *McMains* v. *McMains,* 15 N Y 2d 283).

As far as has been ascertained, the precise situation has not been presented to an appellate court, though there are nisi prius decisions. In all of those cases the following operative facts appeared: the birth of an illegitimate child, an agreement by the father to go through a marriage ceremony to legitimatize the child; no cohabitation thereafter between the parties. The procedure adopted by the husband in all of these cases when the wife insisted on marital rights was to sue for annulment. In this State annulment was granted (*Amsden* v. *Amsden,* 202 Misc. 391).* The same result was reached in Ohio (*Conley* v. *Conley,* 28 Ohio op. 289) and in Pennsylvania (*Osgood* v. *Moore,* 38 Pa. D. & C. 263; but, see, *Wagner* v. *Wagner,* 59 Pa. D. & C. 90). In Florida a slightly different state of facts resulted in a like result (*Stone* v. *Stone,* 159 Fla. 624). There the father of the illegitimate child was a minor and there was an impediment to his marrying. His elder brother went through the ceremony in his stead. Annulment was granted.

We fail to see any distinction between the parties' providing for an otherwise legal dissolution of the marriage and the grant of the same relief by way of annulment. The same underlying principle is common — that the ceremony was never intended

---

* In *Delfino* v. *Delfino* (35 N. Y. S. 2d 693), annulment was denied where there was cohabitation after the ceremony.

to create a relationship. Consequently, it should not engender those protective statutory provisions which our policy has caused to be enacted to govern the relationship validly created. It should be noted that the provisions of the General Obligations Law (§ 5–311) do not create a marital status — they merely limit its disruption. As in all other instances of contractual relationship, an intent to effectuate the relationship is essential to its creation. While secret reservations cannot prevail over expressed intent, here, as in the similar precedents, the actual intent is not in issue.

The order of Special Term should be affirmed.

EAGER and TILZER, JJ., concur with McGIVERN, J.; STEVENS, P. J., and STEUER, J., dissent in opinion by STEUER, J.

Order entered on December 16, 1968, reversed, on the law, without costs or disbursements; the motion to dismiss the complaint denied, without costs.

