OPINION OF THE COURT
Darrell L. Gavrin, J.
The plaintiff commenced this action seeking a declaration that the parties were never married or in the alternative for a divorce. The defendant served a verified answer and counterclaim for divorce.
A hearing was commenced before this Court on February 1, 2001 and continued on February 9 to explore and determine the validity of the parties’ alleged marriage. The relevant facts adduced at the hearing are as follows.
Facts
On May 22, 1994, the plaintiff and defendant participated in a Hindu marriage or “prayer” ceremony at the home of the defendant’s family in Brooklyn, New York. The Hindu prayer ceremony was presided over by Moscan Persad and was attended by 100 to 150 guests. At the time, the plaintiff and defendant were approximately 32 and 28 years old, respectively. During the ceremony, the parties were adorned in traditional Hindu wedding garments, prayers were articulated, the defendant’s parent’s symbolically gave her to the plaintiff, vows were made and rings and flower garland were exchanged. The ceremony lasted approximately two hours. At the conclusion of the marriage ceremony, Mr. Persad said a benediction.
Mr. Persad testified that he is an ordained Hindu priest or “pandit” sanctioned since February 21, 1993 to perform wedding ceremonies. Two certificates, issued by USA Pandits’ Parishad, Inc., were introduced into evidence certifying Mr. Persad as a “Hindu Priest” and “competent in Kamkand (rituals) and Purohitkarm (priesthood).” Both certificates predate the marriage ceremony in this action.
Immediately following the nuptials, a reception was held for 275 friends and family at Terrace on the Park in Corona, Queens. A photo album was introduced into evidence wherein the plaintiff and defendant are depicted in photographs wearing Hindu marriage garments. In other photos, the plaintiff is wearing a white on white tuxedo and the defendant is wearing what appears to be a traditional white wedding gown. At the *713 reception, the parties had a wedding cake and received wedding gifts. After the ceremony and reception the defendant sent the guests “thank you” notes.
It was not disputed that the parties lacked a valid marriage license on May 22, 1994. On three separate occasions, once immediately prior to the ceremony and twice subsequently (January and April 1995), the parties began proceedings to obtain a marriage license, but each time it was not properly secured. Each party blamed the other for the failure to obtain the marriage license. It was also not contested that Moscan Persad was not licensed by the City or State of New York to perform marriage ceremonies.
It was revealed at the hearing that the parties attempted to enter into a premarital agreement. Three days prior to the ceremony, the parties met with an attorney, Stephanie Ressler, who drafted a “prenuptial” agreement which the defendant refused to sign. Subsequently, in June of 1995, the parties met with Ms. Ressler and defendant again declined to execute the agreement.
Further, the Court heard testimony that the parties have filed separate tax returns since the ceremony and that the defendant claimed herself to be single on her returns. Also, it was revealed that the defendant claimed herself as single when she obtained automobile insurance in 1998.
Essentially, the plaintiff contends the marriage is invalid for two reasons: first, the religious ceremony did not comport with the formal legal requirements under the Domestic Relations Law; second, the religious ceremony was merely a custom conducted prior to the parties living together and the parties did not intend to be married until they participated in a civil ceremony.
Conclusions of Law
There is an old cliche that goes “if it walks like a duck and quacks like a duck, and looks like a duck, it’s a duck.” This familiar maxim appears perfectly suited to the case at bar, as it conforms with the intent underlying the statutory structure enacted by the Legislature. Essentially, the Domestic Relations Law establishes that where parties participate in a solemn marriage ceremony officiated by a clergyman or magistrate wherein they exchange vows, they are married in the eyes of the law. (See, Domestic Relations Law §§ 11, 12, 25; Religious Corporations Law § 2.) It is the opinion of the Court that this is precisely what occurred in the instant case.
*714 The parties’ failure to obtain a marriage license does not render their marriage void. Section 25 of the Domestic Relations Law provides that “[n]othing in [Domestic Relations Law article 3] shall be construed to render void by reason of a failure to procure a marriage license any marriage solemnized between persons of full age.” Likewise, Moscan Per sad’s failure to register with the City of New York pursuant to Domestic Relations Law § 11-b prior to performing the marriage ceremony did not render the parties’ marriage void. (See, Shamsee v Shamsee, 51 AD2d 1028 [2d Dept 1976].) In New York, a marriage may be solemnized by “[a] clergyman or minister of any religion.” (Domestic Relations Law § 11 [1].) Section 2 of the Religious Corporations Law defines the terms clergyman and minister as:
“including] a duly authorized pastor, rector, priest, rabbi, and a person having authority from, or in accordance with, the rules and regulations of the governing ecclesiastical body of the denomination or order, if any, to which the church belongs, or otherwise from the church or synagogue to preside over and direct the spiritual affairs of the church or synagogue.”
This statute must be given a broad interpretation so as not to infringe on an individual’s constitutional guarantee of religious freedom. (See, O’Neill v Hubbard, 180 Misc 214 [Sup Ct, Kings County 1943].) Subsumed within this constitutional right is the freedom to be married in accordance with the dictates of one’s own faith. (See, Ravenal v Ravenal, 72 Misc 2d 100 [Sup Ct, NY County 1972].) Thus, short of finding a religious officiant a charlatan or the religion a mere sham, courts have confirmed the validity of a variety of spiritual faiths and their clergies’ authority to solemnize marriages. (See, Matter of Silverstein, 190 Misc 745 [Sur Ct, Bronx County 1947]; O’Neill v Hubbard, supra; see also, Shamsee v Shamsee, supra; cf. Ranieri v Ranieri, 146 AD2d 34 [2d Dept 1989]; Ravenal v Ravenal, supra.)
At the hearing, neither party contested the validity of the Hindu religion. Also, the testimony adduced from Moscan Persad more than adequately established that on May 22, 1994 he possessed the requisite authority under Domestic Relations Law § 11 to solemnize marriages in the Hindu religion. Indeed, other than establishing that Mr. Persad was not registered with the City of New York under Domestic Relations Law § 11-b,there was no testimony advanced to impugn his authority as a priest empowered to officiate marriages in the Hindu religion.
*715 A further issue exists as to the substance of the ceremony. Section 12 of the Domestic Relations Law provides that a marriage is solemnized when “the parties * * * solemnly declare in the presence of a clergyman or magistrate and the attending witness or witnesses that they take each other as husband and wife.” The statute also states that “[n]o particular form or ceremony is required.” (Id.) In the Court’s opinion, the testimony conclusively revealed that the parties engaged in an austere ritual pursuant to the Hindu faith. Numerous guests witnessed the nuptials wherein the parties, before a Hindu pandit, exchanged vows and declared their desire to be husband and wife. Accordingly, all the requirements of a lawful marriage under the Domestic Relations Law were fulfilled.
Notwithstanding complete compliance with the statutes, the plaintiff avers a marriage was not consummated because they did not intend to be married by the religious ceremony. Although the plaintiff expresses his objection to the validity of the marriage in terms of the parties’ intent, his claim fundamentally is that the parties, either expressly or tacitly, entered into an agreement that the religious ceremony would be one of form not substance and that a subsequent civil ceremony would be held. The defendant claims that the parties’ intent is immaterial as it is not expressly delineated as a factor in the Domestic Relations Law.
The plaintiff is correct that an intention to marry is not expressly written in statutes. Nevertheless, “[m]arriage, so far as its validity in the law is concerned, continues to be a civil contract, to which the consent of parties capable in law of making a contract is essential.” (Domestic Relations Law § 10.) Under general contract principles, where parties do not intend to be legally bound by an agreement, there is no contract. (See, Restatement [Second] of Contracts § 21, comment a; 1 Farnsworth, Contracts § 3.7 [2d ed 1990].) However, while a marriage “is declared a civil contract for certain purposes * * * it is not thereby made synonymous with the word contract, employed in the common law or statutes.” (Wade v Kalbfleisch, 58 NY 282, 284 [1874].) A marriage, because of its unique status and substance, differs significantly from ordinary contracts. (See, Cunningham v Cunningham, 206 NY 341 [1912].) It is an “institution” about which the state is “deeply concerned” and takes a profound interest in protecting. (See, Wade v Kalbfleisch, supra; Morris v Morris, 31 Misc 2d 548 [Westchester County 1961].) As such, a marriage is not a contract protected against impairment of obligations under the *716 US Constitution (see, US Const, art I, § 10, cl [1]; Fearon v Treanor, 272 NY 268 [1936]) and is subject to state regulation and supervision once created. Moreover, a husband and wife are not free to “alter or dissolve” their union by agreement. (See, General Obligations Law § 5-311; Mirizio v Mirizio, 242 NY 74, 84 [1926]; Kershner v Kershner, 244 App Div 34 [1st Dept 1935].)
With these principles in mind, courts confronted with circumstances similar to the one at bar have held marriages valid despite the parties’ agreements to the contrary. (See, Anonymous v Anonymous, 49 NYS2d 314 [Bronx County 1944]; Gregg v Gregg, 133 Misc 109 [NY County 1928]; see also, Sheils v Sheils, 32 AD2d 253 [1st Dept 1969].)
In Anonymous v Anonymous (supra), the husband brought an action for an annulment wherein he advanced the theory that the parties’ marriage was invalid because, inter alia, a religious ceremony was not performed after the civil ceremony as per the parties’ agreement. The court rejected the husband’s argument finding that “the law recognizes no privately imposed condition that would alter the marital status.” (Id. at 316.) The court reasoned that marital “status is too much a matter of public concern to allow the parties to tinker with it according to their own notions of what is expedient and proper.” (Id.)
This case and the others cited above are not distinguishable because they concern the converse situation from the one at bar. (I.e., a religious ceremony followed by a civil ceremony as opposed to a civil ceremony followed by a religious one.) Since the Domestic Relations Law draws no qualitative distinction between marriages conducted with and without licenses, the salient point in these cases is not that the civil ceremony occurred first, but rather there was a valid marriage the courts were willing to recognize and protect over the parties’ agreement.
In this case, there was a religious marriage that conformed with all the statutory requirements. As a result, the State of New York and this Court have a vested interest in that union. (See, e.g., Sheils v Sheils, supra at 255.) Alternatively stated, New York State became a “third party to the marriage” (id. at 254) and “[a]ny private reservations [the parties] may have made in regard to their respective obligations under the marital status are void and of no effect.” (Gregg v Gregg, supra at 111.)
As a corollary, this Court’s ruling does not mean parties’ intentions can never render a marriage void. This Court can *717 imagine a variety of circumstances where a religious union might be considered invalid based on a lack of mutual intent to be wed. For instance, if the ceremony was a prank or the parties were under the influence at the time, a marriage could conceivably be a nullity. This is not the case here. Despite the plaintiffs claim, it is clear to this Court the parties’ ultimate intention was to be husband and wife. At best, they were laboring under a mistaken belief that their religious ceremony would not have legal effect.
The plaintiff placed great emphasis on postmarriage events averring they confirmed the nonexistence of a valid marriage. The defendant’s declarations on the tax returns and car insurance that she was single are immaterial in this case. In the Court’s opinion, these statements reflect some financial or other strategy on behalf of the defendant. In fact, it substantiates the Court’s belief that the parties were mistaken as to their marital status after the religious ceremony. Furthermore, other more compelling factors, specifically the parties’ postnuptial cohabitation for approximately seven years and the conception of their child, affirm their marital status.
Any claim that the marriage is invalid based on the plaintiffs individual intent not to be married until a civil ceremony was performed is equally unavailing. Since the Court has determined the parties’ mutual intent would not affect their marital status, it would be inapposite to now hold that one party’s unilateral intent voided the marriage. This Court will not give legal effect to the plaintiffs claim of “crossed fingers” when he solemnly pledged to take the defendant as his wife.
Accordingly, as the plaintiff has failed to overcome the strong presumption favoring the validity of marriages (see, Apelbaum v Apelbaum, 7 AD2d 911 [2d Dept 1959]; Helfond v Helfond, 53 Misc 2d 974 [Sup Ct, Nassau County 1967]), the marriage is adjudged lawful and the Court directs that a declaration be entered to that effect.