ELLEN KELLEY vs. JOHN B. KELLEY.

Essex. November 9, 1893. — March 27, 1894.

Present: FIELD, C. J., ALLEN, HOLMES, KNOWLTON, & MORTON, JJ.

*Foreign Judgment — Jurisdiction — Presumption.*

In the absence of anything to show the contrary, there is a presumption that the common law of another State is like that prevailing here; but this presumption does not extend to the statutory law of another State.

Where a question of the law of another State is in controversy, the party upon whom the burden lies will fail unless evidence is produced to sustain his view; and statutes and decisions which were not put in evidence at the trial cannot be used for the first time at the argument of the case before this court for the purpose of proving the law of such State.

It does not fall within the general jurisdiction of a court of chancery, independently of statutory authority, to annul a marriage for the reason that, when it was contracted, the wife had a former husband living; and there is no presumption that such a court of another State had jurisdiction to entertain a suit of that nature, or in such suit to pass an order for the payment of alimony *pendente lite*, or to enter a final judgment for arrears of alimony, counsel fees, and costs; but the existence of the jurisdiction must be proved at the trial of a suit here to obtain an execution upon the judgment.

PETITION IN EQUITY, filed in the Superior Court, to obtain an execution upon a judgment alleged to have been recovered by the plaintiff against the defendant in the State of New York. Hearing before *Hopkins*, J., who found for the defendant; and, at the plaintiff's request, reported the case for the determination of this court. The facts appear in the opinion.

*C. Brigham*, for the plaintiff.

*H. F. Hurlburt & D. N. Crowley*, for the defendant.

ALLEN, J. In this Commonwealth no power exists in any court to pass an order for the payment of alimony *pendente lite*, or of permanent alimony, in a matrimonial cause of any description, except under provisions of statute conferring such power. By the Constitution of Massachusetts, c. 3, art. 5, it was provided that "All causes of marriage, divorce, and alimony . . . shall be heard and determined by the Governor and Council until the Legislature shall by law make other provision." By St. 1785, c. 69, § 2, it was enacted that "All marriages, where either of the parties shall have a former wife or

husband living at the time of such marriage, shall be absolutely void "; and by § 3, "Divorces from the bond of matrimony shall be decreed, in case . . . either of them [the parties] had a former wife or husband alive at the time of solemnizing such second marriage." In § 5 certain provisions for alimony are made, but none in case of such void marriage. By § 7, " All questions of divorce and alimony shall be heard and tried by the Supreme Judicial Court." It is not necessary to make special reference to later statutes, which have always since 1785 contained such provisions upon these subjects as seemed expedient to the Legislature; and the authority of the court to decree alimony and counsel fees has always been considered to rest exclusively upon the statutes. *Shannon* v. *Shannon*, 2 Gray, 285. *Baldwin* v. *Baldwin*, 6 Gray, 341. *Coffin* v. *Dunham*, 8 Cush. 404. *Davol* v. *Davol*, 13 Mass. 264. *West* v. *West*, 2 Mass. 223, 227. *Orrok* v. *Orrok*, 1 Mass. 341. In the absence of anything to show the contrary, there is a presumption that the common law of another State is like that prevailing here; but this presumption does not extend to the statutes of another State. *Harris* v. *White*, 81 N. Y. 532, 544. *Wilcox Silver Plate Co.* v. *Green*, 72 N. Y. 17.

In the case now before us, it appears that in 1877 a husband brought in the Supreme Court of the State of New York a complaint against his wife, seeking to have his marriage annulled and declared void on the ground that at the time of the marriage she had a former husband living. She answered to the complaint, admitting her former marriage, but averring that it was invalid and void because her former husband was then married to another woman, and that these facts were known to the present husband at the time of his marriage to her. The complaint contained no charge of fraud, force, mistake, or lunacy. In 1888 an order was passed reciting the pleadings, and reciting that it appeared satisfactorily to the court that subsequently thereto an order was made, among other things, that the husband pay to the wife ten dollars a week alimony, commencing October 22, 1877; that it also appeared that he had wholly failed to do so from November 5, 1877, though due demand had been made; and that he had failed to prosecute his action, and had departed from the State; and an order was made that the complaint be

dismissed with costs, that her attorney have an extra allowance of $100, and that the wife recover of and have judgment against her husband for $6,114, being the amount of alimony due and owing to her under said order, and also for costs and the above allowance; and judgment was entered accordingly on April 17, 1888. It is also recited that counsel appeared for the husband at the time of this order in 1888. Judgment was entered accordingly; and, the husband having removed to this Commonwealth, the wife now brings a suit in equity here praying the Superior Court to order execution to issue upon said judgment. In defence, no direct charge is made that the entry of the judgment was procured by fraud or imposition upon the court, but it is set up, and the court has found as a fact, that on April 27, 1887, about a year before the entry of the judgment in New York, the husband obtained in this Commonwealth a decree annulling his marriage, his wife having been served with process and defaulted for non-appearance. There is nothing to show that this decree of nullity made here was known to the Supreme Court of New York at the time when the judgment there was entered. The order for the payment of alimony *pendente lite* is not set forth in the record, and does not appear otherwise than by the recital in the final order.

The principal question which we have to consider is, whether it appears that the Supreme Court of New York had jurisdiction in the suit for nullity to pass an order for the payment of alimony *pendente lite*, and at the time of dismissing the suit to pass an order for the payment of the arrears of alimony down to the date of the order, and of an allowance for counsel fees, and for costs, and to enter judgment thereon. Jurisdiction may always be inquired into, and a judgment entered without jurisdiction will not be enforced. *Simmons* v. *Saul*, 138 U. S. 439. *Thompson* v. *Whitman*, 18 Wall. 457, 468. *Cummington* v. *Belchertown*, 149 Mass. 223. *Cross* v. *Cross*, 108 N. Y. 628.

Ordinarily, and where the proceedings of a court of general jurisdiction are according to the course of the common law, there is a presumption in favor of the regularity of its proceedings, and it will be presumed to have had such jurisdiction as it has assumed to exercise, unless the contrary is shown. *Galpin* v. *Page*, 18 Wall. 350, 365. In the present case, the justice of

the Superior Court reports that the defendant, among other defences, contended that the judgment alleged had not been proved, and he declined to enforce the judgment rendered in New York, but the special ground of his refusal is not stated. So far as appears, no evidence was introduced on the one side or on the other to show the jurisdiction and authority of the court in the matter. No evidence of the law of New York, by statutes or decisions of courts or otherwise, appears to have been presented; and there was nothing to sustain the jurisdiction except the fact that the Supreme Court, which was a court of general jurisdiction, assumed to exercise it. The question is whether this is enough in a proceeding of this kind.

In the argument before us certain statutes and decisions have been referred to which are supposed to bear upon the authority and jurisdiction of the court, and the fact is thus brought to our attention that there are statutes and decisions which relate to the subject. As already mentioned, the common law of another State is presumed to be the same as that which is established here, unless shown to be otherwise; but there is no such presumption in relation to statutes or to local laws or usages. These must be proved as facts at the trial, and where a question of the law of another State is in controversy, the party upon whom the burden lies will fail unless evidence is produced to sustain his view; and statutes and decisions which were not put in evidence at the trial cannot be used for the first time at the argument of the case before us for the purpose of proving the law of such State. _Hunt_ v. _Johnson_, 44 N. Y. 27. _Hull_ v. _Mitcheson_, 64 N. Y. 639. _Hackett_ v. _Potter_, 135 Mass. 349, 350. _Murphy_ v. _Collins_, 121 Mass. 6. _Ufford_ v. _Spaulding_, 156 Mass. 65, 69.

We therefore are not at liberty to place our decision upon the result of such examination as we might now be able to make, even with the aid of the citations by counsel of the statutes and decisions in New York in respect to marriage and divorce, nullity of marriage, and alimony, except so far as such decisions may throw light upon the rules of common law existing independently of the statutes.

We have, then, to consider in the first place whether it falls within the general jurisdiction of a court of chancery, without statutory authority, to entertain a suit for nullity of marriage in

a case where no fraud, duress, mistake, or lunacy is explicitly charged, and where accordingly no such ground is alleged as would enable such a court to annul an ordinary contract. The complaint of the husband in the present case, as presented to the Supreme Court of New York, only charged as a ground for avoiding his marriage that at the time when it was entered into his wife had a former husband living, and that her marriage to such former husband was in full force and validity. It did not charge that he was led to marry her through deception, or even through ignorance of the facts. No doubt instances sometimes occur where a man and a woman who wish to live together go through a form of marriage, for social or other purposes, taking the chance of subsequent disturbance or trouble, though well knowing that the marriage is void for the reason that one of them has a former husband or wife living, or that they are within prohibited degrees of kin. Both real life and fiction furnish illustrations of this. Such marriages are of course void, and may be declared so under the authority of statutes like those which have long existed in this Commonwealth. St. 1785, c. 69, § 3. Rev. Sts. c. 76, § 3. But in our opinion a court of chancery would decline to act in such a case by virtue of its own inherent jurisdiction, and without the authority of a statute enabling it to do so. The chief aid which we have derived in determining this question comes from the carefully considered decisions in New York, where the court has assumed jurisdiction to declare a marriage void for lunacy ; *Wightman* v. *Wightman*, 4 Johns. Ch. 343 ; and fraud ; *Ferlat* v. *Gojon*, Hopk. Ch. 478 ; but has declined for want of jurisdiction to do so for impotence ; *Burtis* v. *Burtis*, Hopk. Ch. 557. In the last case the chancellor said : " The cases in which this court can annul marriages in virtue of its powers as a court of equity must be few and very peculiar ; and they must appertain to the jurisdiction of equity." In *Griffin* v. *Griffin*, 47 N. Y. 134, the same question was incidentally discussed as follows, in a learned and elaborate opinion delivered by Rapallo, J. : " The Court of Chancery of this State has in some cases entertained bills to declare the nullity of marriages independently of any statute conferring jurisdiction. But these were cases in which the marriage was sought to be declared void for some

cause for which chancery had power to cancel or avoid all contracts, such as lunacy or fraud, and it was held that the marriage contract was not excepted from the operation of this general jurisdiction. . . . In all other cases it must be conceded that the jurisdiction of the Court of Chancery of this State, in actions for divorce, either on the ground of nullity or for cause arising subsequent to the marriage, is founded wholly upon the statutes." (p. 138.)   The court expressed no definite opinion on the question whether the particular case then before it, which was an action brought by a husband to have the marriage declared void by reason of her former marriage, would be cognizable by the court independently of the statutes (p. 140); and it does not appear in the report of the case whether or not there was any fraud or mistake.   The same doctrine above stated was reiterated in the recent case of *Erkenbrach* v. *Erkenbrach*, 96 N. Y. 456, where the court, by Ruger, C. J., says : " The courts in this State have no common law jurisdiction over the subject of divorces, and their authority is confined altogether to the exercise of such express and incidental powers as are conferred by the statute.   Previous to the revision of the statutes it was, however, held that the Court of Chancery had authority, by virtue of its general equity jurisdiction, to entertain suits to annul marriage contracts, upon the same grounds which authorized them to annul contracts generally. . . . Beyond this, however, the Court of Chancery refused to go." (p. 463.) Then, after quoting a portion of the passage above cited from the judgment in *Griffin* v. *Griffin*, the court adds : " The provisions of the Revised Statutes constitute a comprehensive and detailed scheme for the treatment of matrimonial and domestic differences, framed with great care to define the rights and liabilities of the respective parties, and the power and duties of the courts." (pp. 465, 466.)   This leaves the impression that at the time of rendering the decision, in 1884, the whole subject was deemed to be covered by legislation, to which the courts must look for their powers and authority ; and so far as we know, the same is the case since the adoption of the present Code of that State.   See also 2 Bish. Mar., Div. & Sep. §§ 801–809, where the question is treated of, but no definite opinion expressed.

We have come to the conclusion that it does not fall within the general jurisdiction of a court of chancery, independently of authority by statute, to annul a marriage for the reasons set forth in the complaint made by the present defendant against the present plaintiff in the court of New York, and also that no such jurisdiction existed in that court at the time of entering the judgment now under consideration, or was asserted by it; and that whatever the court did it assumed to do under the express or incidental powers conferred upon it by statutes of that State.

We are brought, then, to consider more directly the question whether, in a case of this kind, where the court acted under statutory authority, jurisdiction should be presumed merely from the fact that the court assumed to exercise it. In *Galpin* v. *Page*, 18 Wall. 350, the court says: "The presumptions indulged in support of the judgments of superior courts of general jurisdiction are also limited to jurisdiction over persons within their territorial limits, persons who can be reached by their process, and also over proceedings which are in accordance with the course of the common law." (p. 367.) A passage is quoted with approval from *Morse* v. *Presby*, 25 N. H. 299, 302, as follows: "The jurisdiction in such cases, both as to the subject matter of the judgment and as to the persons to be affected by it, must appear by the record; and everything will be presumed to be without the jurisdiction, which does not distinctly appear to be within it." And a little further on the court adds: "Where the special powers conferred [by statute] are exercised in a special manner, not according to the course of the common law, or where the general powers of the court are exercised over a class not within its ordinary jurisdiction upon the performance of prescribed conditions, no such presumption of jurisdiction will attend the judgment of the court. The facts essential to the exercise of the special jurisdiction must appear in such cases upon the record." (p. 371.) It is also said in *Sabariego* v. *Maverick*, 124 U. S. 261, that the presumption in favor of regularity of proceedings does not apply to give jurisdiction in proceedings not according to the common course of justice. In *Holmes* v. *Broughton*, 10 Wend. 75, it was held that where a claim was founded upon a proceeding in Ver-

mont unknown to the common law, but authorized by a statute of that State, the statute must be set forth, so that the court might see that the proceedings were conformable thereto; and that a general averment that the proceedings were according to the laws of Vermont and fully authorized thereby was not enough; and that the court could not take judicial cognizance of laws of sister States at variance with the common law. This decision was cited with apparent approval in *Harris* v. *White*, 81 N. Y. 532, 544. In *Embury* v. *Conner*, 3 Comst. 511, 523, and in *Striker* v. *Kelly*, 7 Hill, (N. Y.) 9, it was held that the Supreme Court of New York exercised its powers under the New York street law as a court, but that as its powers in such matters were wholly derived from the statutes, and did not belong to it as a court of general jurisdiction, its decisions must be treated like those of a court of special and limited jurisdiction. A similar rule was applied in the Surrogate's Court to a decree of divorce granted by the proper court, but not shown to be within the conditions and limitations prescribed by the statutes. *Lawrence's case*, 18 Abb. Pr. 347. See also *Cullen* v. *Cullen*, 18 N. Y. St. Rep. 381. For an application of similar doctrine to different subjects, see *Morse* v. *Presby*, 25 N. H. 299, which is cited and approved in 18 Wall. 371; *Bradley* v. *Jamison*, 46 Iowa, 68; *Louisville, New Albany, & Chicago Railway* v. *Parish*, 33 N. E. Rep. 122; *Furgeson* v. *Jones*, 17 Oregon, 204; *Northcut* v. *Lemery*, 8 Oregon, 316; *Heatherly* v. *Hadley*, 4 Oregon, 1, 14; *Gray* v. *Larrimore*, 2 Abb. U. S. 542; *Belcher* v. *Chambers*, 53 Cal. 635; *Neff* v. *Pennoyer*, 3 Sawyer, 274, 299, 300; *Denning* v. *Corwin*, 11 Wend. 647. The rule is uniform in the case of inferior courts, that their jurisdiction, when brought into question, must be clearly shown. *Thomas* v. *Robinson*, 3 Wend. 267. *Sheldon* v. *Hopkins*, 7 Wend. 435. *McLaughlin* v. *Nichols*, 13 Abb. Pr. 244.

The same rule prevails in Massachusetts. The decision in *Commonwealth* v. *Blood*, 97 Mass. 538, was placed solely upon this ground, the document produced being treated as if it were a record, though strictly speaking it was not entitled to be so treated; and it was held that the jurisdiction of a court of record in California over the subject of divorce is a special authority not recognized by the common law, and its powers

must be shown, and must appear to have been strictly pursued. A similar decision was made in respect to the jurisdiction of a court of record of another State to decree an absolute and final dissolution of a corporation at the suit of an individual, in *Folger* v. *Columbian Ins. Co.* 99 Mass. 267, 274 ; and in respect to a question of the adoption of a child, in *Foster* v. *Waterman*, 124 Mass. 592. The rule on which these decisions rest is not peculiar to Massachusetts, but, as has been seen, it has a wide recognition elsewhere.

The proceedings which resulted in the judgment in the Supreme Court of New York in the case now before us were not in accordance with the course of the common law. 1 Bish. Mar., Div. & Sep. §§ 71, 128. Jurisdiction to entertain them has not been shown. If the court had jurisdiction over the general subject, and if it should be assumed from the final order that an interlocutory order was actually passed for the payment of alimony *pendente lite*, it has not been shown that the court had authority to pass such order, or at the conclusion of the suit to order payment of arrears of such alimony, or to enter a judgment for such arrears, which should stand as a valid judgment enforceable in other courts. We do not know whether it would possess such authority in respect to alimony, even if it had jurisdiction over the general subject of the suit, or whether such a judgment for arrears of alimony could be enforced in New York by issue of an execution thereon, without further proceedings in court. *Knapp* v. *Knapp*, 134 Mass. 353. And see *Hoffman* v. *Hoffman*, 55 Barb. 269 ; *Galinger* v. *Galinger*, 4 Lans. 473. The jurisdiction in such cases is usually special, and the remedies special, and we are satisfied that this judgment depends for its validity upon statutes which are not before us, or upon usages or a course of practice with which we are not familiar, and we have not the means of knowing what faith and credit would be given to such a judgment in the courts of the State of New York. 1 Bish. Mar., Div. & Sep. § 128. *Allen* v. *Allen*, 100 Mass. 373. The justice of the Superior Court rightly refused to issue an execution upon the judgment for the amount of the alimony and counsel fees.

The judgment for costs of suit must rest on the same basis. The proceedings being special, the right to costs must depend

upon the statutes, or upon the inferences to be drawn from them. In *Stevens* v. *Stevens*, 1 Met. 279, it was held, under our statutes then in force, that where a husband voluntarily discontinued a libel against his wife for a divorce she was entitled to a judgment and execution against him for costs. There was, however, an express statute providing that the court might hear and determine all matters relating to divorce, according to the course of proceedings in ecclesiastical courts and in courts of chancery. Rev. Sts. c. 76, § 38. The court was therefore authorized to allow costs, unless there was something in the relation of husband and wife to prevent, and the court held that there was not, and costs were allowed. The authority of the court in New York, in respect to costs in a proceeding like that before us, for nullity of marriage, is not shown. We suppose it depends, directly or indirectly, upon the statutes, which have not been put in evidence. 2 Barb. Ch. Pract. (2d ed.) 250. 2 Bish. Mar. & Div. (5th ed.) § 366.

For these reasons, without considering other objections, the entry must be,                              *Decree for the defendant.*