MONROE J. CONSTAM, RELATOR, v. WALTER R. DARBY, COMMISSIONER OF MUNICIPAL ACCOUNTS, RESPOND-ENT.

Submitted December 2, 1920—Decided February 3, 1921.

1. The allowance of a peremptory writ of *mandamus* rests in judicial discretion and it is awarded only in cases when the act to be done is ministerial and the duty clear.

2. The act entitled "An act concerning municipal accountants" (*Pamph. L.* 1918, *p.* 1007) does not in terms or by implication impose upon the commissioner of municipal accounts any duty to receive and file the declarations of candidates required by the act, nor to receive the statutory fee nor to issue registration licenses to applicants therefor.

On rule to show cause for a *mandamus*.

Before Justices SWAYZE, PARKER and BLACK.

For the relator, *Michael J. Tansey*.

For the respondent, *Joseph Lanigan*, assistant attorney-general.

The opinion of the court was delivered by

PARKER, J. This is a rule requiring the commissioner of municipal accounts to show cause why a peremptory writ of *mandamus* should not issue commanding him to register said Monroe J. Constam as a municipal accountant for New Jersey pursuant to the statute in such case made and provided. The substantial question argued by counsel is whether the supposed duty of the commissioner of municipal accounts to register applicants is a purely ministerial one or one with respect to which he is entitled to exercise a discretion so as to refuse registration to applicants deemed by him to be unfit to perform the duties of municipal accountant. We are unable to discover from the statute bearing on the subject

that the commissioner of municipal accounts is under any duty whatever in the premises.

The statute is a somewhat puzzling piece of legislation and its provisions seem to be incomplete. It will be found at *Pamph. L.* 1918, *p.* 1007, and a short abstract of its provisions follows. By section 1, the work of auditing the accounts of municipalities is to be done only by auditors or accountants "who shall hold an uncanceled certificate of registration as municipal accountant for New Jersey." Section 2 provides that before any person shall undertake the work of auditing, &c., he shall qualify as municipal accountant for New Jersey by subscribing to two declarations set out in the section. This the relator concededly has done. Section 3 is not relevant to the present controversy, as it provides that whenever an audit is made, the accountant shall file a certified copy of the report with the commissioner of municipal accounts at the state house, in Trenton. Section 4 provides that in the event of proof that an accountant shall have knowingly omitted to report irregularities, &c., or shall have made a false report of an audit or shall fail to file a report in due course as directed by section 3, "His registration license may be canceled by the commissioner of municipal accounts," provided that he may appeal to a Vice Chancellor in such case, and the Vice Chancellor may enjoin such cancellation until the matter has been heard and decided.

Section 5: "The license fee for the registration of each accountant who shall apply for a license to practice as a municipal accountant for New Jersey as herein described shall be $5.00. Licenses shall be issued annually thereafter and like fees imposed for each annual registration or renewal. All registration licenses shall date from June first preceding date of application."

Section 6 provides for the imposition of a fine of $50 on any person undertaking to audit accounts within the state "who shall not hold an uncanceled license or a license against which an injunction has been issued as above described. Such fine shall be collected by the treasurer of the State of New

Jersey by suit brought in any court of competent jurisdiction."

Section 7 provides that if an accountant coming within the act is a member or employe of a firm or corporation engaged in such work, the said firm may sign an audit, but the individual name of the accountant making it is to be added and that both are to be responsible.

The facts show, generally, that the relator made his declaration and forwarded his fee to the commissioner asking for "a license as registered municipal accountant of New Jersey," and that the commissioner refused to recognize the application on the ground that a corporation with which the relator had been connected had made one or more improper or defective audits, and that these would have to be adjusted before any license would be issued to any official or representative of that company.

Our examination of the act leads to the conclusions that it impliedly contemplates a certificate of registration as municipal accountant as a condition precedent to the audit of municipal accounts in New Jersey; that to obtain such certificate it is necessary that the party desiring it shall subscribe to the declarations contained in section 2, and pay a license fee of $5 provided in section 5; but there is nothing in the statute to indicate what is to be done with the declaration after it is subscribed, nor is there anything to indicate to what official the license fee is to be paid or what is to be done with it after it is paid. The statute also fails to prescribe who is to issue the certificate of registration as municipal accountant, which evidently is the same thing as a license to practice mentioned in section 5. The act does say that the registration licenses may be canceled by the commissioner for certain specified causes. The act likewise fails to say to whom the application for license mentioned in the fifth section is to be made. No form of registration license is prescribed.

Our view is that any so-called applicant is qualified, in the language of the statute, by making the declaration and paying the fee, provided there is someone authorized to receive it, and all he needs to practice is some proper evidence that he

has done these things; and no doubt the paper called a registration license would be adequate if it certified that he had made his declaration and that he had paid his fee. But it is impossible to tell who is to do the registering or who is to issue the certificate or who is to take the money; the act does not seem to impose any such duty on the commissioner of municipal accounts, and the elementary rule in cases of *mandamus* is that the allowance of the writ rests in judicial discretion and that it is awarded only when the act to be done is ministerial and the duty clear. *Gleislman* v. *West New York*, 74 *N. J. L.* 74; *Hugg* v. *Ivins*, 59 *Id.* 139; *Uszkay* v. *Dill*, 92 *Id.* 327; *Secaucus* v. *Kiesewetter*, 83 *Id.* 227.

Whatever may be the rights of the relator to act as a municipal accountant upon making the statutory declaration and paying the statutory fee, and to have a registration license issued to him such as was intended by the legislature, it is very far from plain that any duty is imposed upon the commissioner of municipal accounts, either to place the declaration on file or to receive the money or to issue a registration license; and for these reasons the rule to show cause made in this case must be discharged.