DIVO LOUIS TONTI, PETITIONER–APPELLANT, v. VIRGINIA
MEESON HODGES CHADWICK, FALSELY CALLED VIR-
GINIA HODGES TONTI, DEFENDANT–RESPONDENT.

Argued January 10, 1949—Decided March 7, 1949.

532

Mr. G. W. C. McCarter argued the cause for petitioner-appellant.

Mr. Leon Dreskin argued the cause for defendant-respondent.

The opinion of the court was delivered by

HEHER, J.   Petitioner sued for annulment of his ceremonial marriage to defendant performed in this State on May 22, 1943,

on the ground of the latter's prior subsisting marriage to one Charles William Chadwick, Jr. Defendant answered denying the marriage was bigamous and counterclaimed for support for herself and a child of the union.

The decree dismissed the petition and awarded separate maintenance to defendant and the child at the rate of $12. and $10. per week, respectively. The appeal is from the provisions of the decree dismissing the petition for annulment and awarding support to defendant. The allowance to the child is not challenged.

The prior marriage was admitted, but the contention is that it was dissolved by a decree of divorce rendered by the Court of First Instance for the Judicial District of Hidalgo, State of Tlaxcala, in the Republic of Mexico. Petitioner challenges this decree as utterly void for want of jurisdiction. It was entered July 27, 1942 in a suit instituted in the name of Chadwick, and purports to dissolve the marriage because of his defendant wife's abandonment of "the matrimonial home without any justified cause since more than six months ago," and of "notorious incompatibility of temperament between husband and wife," all proved "with the defendant's confession which according to" the Mexican Code of Civil Procedure "is ample evidence." The decree came "by mail." Neither party had a residence in Mexico; there is no pretense of a residence there by either. Neither journeyed to Mexico. They were represented in the proceedings by the resident Mexican attorneys in fact, holding their several powers of attorney. The decree recites that the defendant's attorney submitted himself and "his grantor to the jurisdiction and competence of the court" and "confessed" the complaint "in all its particulars and expressed his agreement to the same;" and it declares that the plaintiff "proved his action," and that his defendant wife "confessed the complaint through her attorney in fact," naming him.

The validity of the decree was not put in issue by the pleadings. Ordinarily, it is requisite that the foreign divorce be pleaded and its validity made an issue by the pleadings. *Fairchild v. Fairchild*, 53 *N. J. Eq.* 678 *(E. & A.* 1895); *Magowan v. Magowan*, 57 *N. J. Eq.* 322 *(E. & A.* 1898); *Cole v.*

*Cole,* 96 *N. J. Eq.* 206 *(Ch.* 1924*); Feickert v. Feickert,* 98 *N. J. Eq.* 444 *(Ch.* 1925–1926*).* If a decree of divorce of a foreign country embodies all the jurisdictional prerequisites and is otherwise sufficient on its face, there is a presumption in favor of its validity under the laws of the sovereignty in which it was rendered, but extraterritorial recognition rests on the ancient doctrine of comity controlled by the public policy of the state whose recognition is invoked. The Full Faith and Credit Clause of the Federal Constitution *(Article IV section* 1*)* has no application. The grounds of collateral attack, such as want of jurisdiction, are issues to be raised by the pleadings and made the subject of proof in accordance with the normal course of judicial procedure. But here the question of the validity of the foreign divorce was tried and determined as if the issue had been framed by the pleadings; and since the nullity of the decree is revealed by the instrument itself, and the evidence is confirmatory of the jurisdictional deficiency, we have concluded to consider the point as if issue had been joined thereon in the pleadings.

■■ The decree is utterly void for want of jurisdiction of the subject matter. The basis of jurisdiction to dissolve the matrimonial status is domicile. *Williams v. North Carolina,* 317 *U. S.* 287, 63 *S. Ct.* 207, 87 *L. Ed.* 279 *(*1942*); Williams v. North Carolina,* 325 *U. S.* 226, 65 *S. Ct.* 1092, 89 *L. Ed.* 1577 *(*1944*); Sherrer v. Sherrer,* 334 *U. S.* 343, 68 *S. Ct.* 1087, 1097, 92 *L. Ed.* 1429 *(*1948*); Bell v. Bell,* 181 *U. S.* 175, 21 *S. Ct.* 551, 45 *L. Ed.* 804 *(*1900*); Hollander v. Hollander,* 137 *N. J. Eq.* 70 *(E. & A.* 1945*).* The dissolution of a marriage is governed by the *lex domicilii.* Here, the matrimonial domicile was not in Mexico; neither party was domiciled there. Each was domiciled in New Jersey and resident here at and prior to the time of the decree. Indeed, there is no adjudication of domicile or residence of either in Mexico. The decree plainly does not proceed upon the hypothesis of domicile or residence as a jurisdictional prerequisite. And it purports to dissolve the marriage bond for a cause not recognized by the laws of New Jersey. It is provided by statute that if an inhabitant of this State shall go into another state or country in order to obtain a divorce

"for a cause which occurred while the parties resided in this state, or for a cause which is not ground for divorce under the laws of this state," a decree so obtained shall be of no force or effect in this state. *R. S.* 2:50–35.

■ But petitioner had good reason to know that the decree of divorce was at least of questionable validity. Indeed, it seems reasonably clear that he had no abiding confidence in the legal integrity of the instrument. Inquiry would have disclosed that the decree was void; and it is but fair to presume that he refrained from inquiry because of the fear of unwelcome information. Be this as it may, the duty of inquiry was his. *Watkinson v. Watkinson,* 67 *N. J. Eq.* 142 *(Ch.* 1904*).* It is almost a matter of common knowledge that the prevalent "mail order" Mexican divorce is a nullity. Petitioner was a junior executive of a large public utility corporation, not untutored and inexperienced. He did not dwell in an ivory tower wholly oblivious to the implications of such mundane procedures and practices. It was not open to him to invoke the general jurisdiction of equity for a decree of nullity. He was not himself innocent of wrongdoing. *Rooney v. Rooney,* 54 *N. J. Eq.* 231 *(Ch.* 1896*); Kelley v. Kelley,* 161 *Mass.* 111, 36 *N. E.* 837, 25 *A. L. R.* 800 *(*1894*).* And in the exercise of the statutory jurisdiction *(R. S.* 2:60–1, *et seq.),* he is precluded from relief by the operation of the maxim that "unclean hands" will bar the remedy of annulment. The burden was upon him to prove his innocence "of any intentional violation of the law" by a preponderance of the evidence; and he failed to sustain it. This principle was established by the old Court of Errors and Appeals in *Tyll v. Keller,* 94 *N. J. Eq.* 426 *(E. & A.* 1922*);* and it was lately reaffirmed by this court in *Smith v. Hrzich,* 1 *N. J.* 1, 61 *Atl. (2d)* 497 *(*1948*).* See, also, *Hollingshead v. Hollingshead,* 91 *N. J. Eq.* 261 *(Ch.* 1919–1920*).*

■ It is a corollary of the foregoing that defendant is not entitled to alimony. The jurisdiction to award alimony is purely statutory; and the obligation is predicated upon a lawful marriage. *R. S.* 2:50–37; 2:50–39. The burden was on the counterclaimant to prove the marriage relationship; and in this, of course, she failed. *Vide Field v. Field,* 103 *N. J. Eq.* 174

*(Ch.* 1928*); Profcnius v. Profenius,* 90 *N. J. Eq.* 45 *(Ch.* 1918–1919*).*

In New York, the obligation of support has been enforced in certain cases by means of a *quasi* estoppel, notwithstanding that the marriage was a nullity. *Krause v. Krause,* 282 *N. Y.* 355, 26 *N. E. (2d)* 290 *(*1940*).* See, also, *Rooney v. Rooney, supra.* But this doctrine is not applied where the bigamous marriage was founded upon a Mexican divorce such as we have here. *Caldwcll v. Caldwell,* 298 *N. Y.* 146, 81 *N. E. (2d)* 60 *(*1948*).* As in that case, there was not even the slightest semblance or color of jurisdiction in the Mexican court to dissolve the marriage here under review. The attempt to confer jurisdiction upon the foreign court by the powers of attorney was wholly ineffectual. It was the result of a collusive compact to procure a foreign divorce contrary to the policy of our own statute, by parties whose domicile and residence remained in New Jersey. There was no lawful submission to the jurisdiction of the Mexican forum. That court did not have cognizance of either the subject matter or the parties. The marriage here did not give rise to the obligation of support, either under the statute or by the operation of a *quasi* estoppel. Defendant was aware of the vital infirmity in the foreign decree, and so equally at fault. To apply the principle of estoppel in such circumstances would be to place in the hands of the parties the opportunity and the means of frustrating the policy of our own statute which puts the dissolution of the marriage status beyond the control of the parties; and this would be inadmissible. *Hollingshcad v. Hollingshead, supra.*

Where, as here, the parties are *in pari delicto,* the law leaves them where it finds them, according to the maxim *in pari dclicto pctior cst conditio defendentis.*

The allowance to counsel is not excessive.

The decree is reversed as respects the award of alimony to respondent on the counterclaim, but affirmed otherwise.

WACHENFELD, J. (dissenting in part). I am in accord with so much of the majority opinion which holds that the appellant is precluded from relief as to his petition for an annulment of marriage.

Where one with full knowledge of the factual situation goes through a marriage ceremony with a woman and cohabits with her for a period of time, he cannot thereafter obtain a decree of annulment on the basis that his spouse at the time of the ceremony was the lawful wife of another and at the time of her second marriage a divorce decree previously obtained was invalid. *Keller v. Linscnmycr,* 101 *N. J. Eq.* 664 *(Ch. 1927).* No one can successfully annul a marriage when entered into with knowledge that either party had a former spouse living. Ignorance of the essential facts is a prerequisite of relief. *Tyll v. Keller,* 94 *N. J. Eq.* 426 *(E. & A.* 1923); *Smith v. Hrzich (Sup. Ct.* 1948) 1 *N. J.* 1.

But I cannot agree with that part of the opinion which relieves the appellant from his obligation to support the respondent. Both parties had the same knowledge and belief that the Mexican divorce decree previously obtained by respondent from a prior husband was sufficiently valid to permit their lawful marriage. Upon this assumption they went through a marriage ceremony and lived together as husband and wife for more than two years. A child was born of the marriage and is now four years old. They separated in November 1945 because of some minor disputes which had occurred and it was not until June 1946, after consulting counsel, that the appellant decided to attempt to annul his marriage upon the ground that the respondent's Mexican decree was a nullity.

As stated in *Tyll v. Keller, supra,* having tired of his bargain, the luster of which had been temporarily dimmed by petty arguments, and finding no other way out, the husband attempts an annulment of the marriage. So far as I am concerned, although the petition does not so state, his main object in this litigation is to avoid his financial obligation to support and maintain the respondent.

The majority opinion denies his right to annul the marriage on the unclean hands doctrine. As a result, the appellant, although estopped from annulling the marriage, is nevertheless permitted to escape the obligation of support and maintenance. It is a peculiar and strange kind of equity which by its decree prohibits an attack upon the contract itself but abnegates the pecuniary obligation which flows from it.

True *Caldwell v. Caldwell*, 298 *N. Y.* 146, 81 *N. E. 2d* 60 *(1948)*, so holds, but I am unwilling to subscribe to the reasoning there advanced in this regard. The result arrived at in *Krause v. Krause, 282 N. Y.* 355, 26 *N. E. 2d* 290 *(1940)* enforcing the obligation to support by the application of quasi estoppel notwithstanding the marriage was a nullity, is more logical and equitable. The court there held:

"To refuse to permit this defendant to escape his obligation to support plaintiff does not mean that the courts of this State recognize as valid a judgment of divorce which necessarily is assumed to be invalid in the case at bar, but only that it is not open to defendant in these proceedings to avoid the responsibility which he voluntarily incurred."

Equity, founded as it is upon good conscience, should not grant relief to a complainant either directly or indirectly in any attempt which it deems unconscionable. The appellant's effort here to relieve himself of the obligation to support which he voluntarily assumed and continued, in my judgment, is unconscionable and the relief which he asks for should not be granted either in his request by way of annulment or by way of defense to the counterclaim for support by the wife. See *Rooney v. Rooney, 54 N. J. Eq.* 231 *(Ch. 1896)*.

Evidence of a ceremonial marriage followed by cohabitation raises a strong presumption of the legality of the marriage, which presumption is founded "in the motives which govern human conduct and in the policy lying at the base of our social system." *Sparks v. Ross, 72 N. J. Eq. 762 (Ch. 1907)*. A party asserting the illegality of a marriage has the burden of negativing every reasonable possibility of its validity. *Keller v. Linsenmyer, supra.* If appellant is estopped to deny the validity of the marriage in affirmative relief, which is the decision of the majority opinion, the estoppel should also operate equally to bar his attack upon the marriage when the wife seeks to obtain the enforcement of the obligations based upon that relationship.

*For reversal in part:* Chief Justice VANDERBILT and Justices CASE, HEHER, BURLING and ACKERSON—5.

*For affirmance:* Justice WACHENFELD—1.