23 N.J. Super. 150 (1952)
92 A.2d 653
ALFREDO ANTUNES, PLAINTIFF,
v.
MARGARITA ARGAEZ ANTUNES, AND JAMES A. TUMULTY, JR., CITY CLERK OF THE CITY OF JERSEY CITY, HUDSON COUNTY, NEW JERSEY, DEFENDANTS.
Superior Court of New Jersey, Law Division.
Decided November 18, 1952.
*151 Mr. Meyer M. Semel, attorney for plaintiff.
Mr. John B. Graf, attorney for defendant James A. Tumulty, Jr.
PROCTOR, J.S.C.
This action in lieu of prerogative writ had a two-fold purpose, namely, to establish by declaratory judgment the validity of the divorce obtained in Mexico by the plaintiff, Alfredo Antunes, from Margarita Argaez Antunes, and to compel the City Clerk of Jersey City, James A. Tumulty, Jr., to issue a marriage license to the plaintiff. The pursuit of a declaratory judgment has now been abandoned and the sole question for determination is the duty of the city clerk to issue the marriage license.
The pleadings and the pretrial order reveal that on July 21, 1928 the plaintiff married Margarita Argaez in New York City and resided there with her until August 1933, at which time she returned to her birthplace, Merida, State of Yucatan, Republic of Mexico, where she has since resided. Plaintiff never went to Mexico but continued to reside in New York City and on November 24, 1945 instituted a divorce proceeding through a legal representative in the Civil Court, District of Bravos, State of Chihuahua, Republic of Mexico. At this time the plaintiff was a resident *152 of the State of New York, and his wife a resident of the State of Yucatan, Republic of Mexico. It does not appear that Margarita Argaez Antunes was ever a resident of the State of Chihuahua. On December 18, 1945 a divorce decree was entered in the city of Jaurez, State of Chihuahua, Republic of Mexico, on the ground of "incompatibility of temperaments." An examination of the decree discloses that Margarita Argaez Antunes was served by "* * * Notices which were twice published in the Official Periodical of the State" and that no answer was filed on her behalf. After the divorce decree had been entered, plaintiff moved from New York to New Jersey. At the time of the institution of this action he was a resident of Jersey City and had made several applications for a marriage license which the city clerk refused to issue on the ground that the plaintiff did not appear to be legally free to marry again, since the Mexican divorce decree lacked colorable validity.
The statute relating to the issuance of marriage licenses is R.S. 37:1-8, as amended L. 1946, c. 185, § 4, which provides:
"A licensing officer shall, before issuing a marriage license, require the contracting parties to appear before him and subscribe and swear to an oath attesting the truth of the facts respecting the legality of the proposed marriage as set forth in the form supplied by the State Bureau of Vital Statistics (now Division of Vital Statistics and Administration, State Department of Health). Said testimony shall be verified by a witness of legal age. A licensing officer shall issue a license only if it is thus made to appear before him that no legal impediment to the marriage exists. * * *."
The form supplied by the Division of Vital Statistics and Administration, State Department of Health includes, inter alia, the following questions:
"8a. Have you ever been married? * * * If so, are you now legally free to marry again? * * *
8b. If divorced, when and where were you divorced? * * *"
While it is true that a city clerk is a ministerial officer, nevertheless, R.S. 37:1-8 invests him with a measure *153 of judicial authority to determine whether or not a legal impediment to the marriage appears to exist. In a matter of this kind he represents not only the City of Jersey City but also the State of New Jersey, and the State of New Jersey has sufficient interest to question "mail order" Mexican divorces. State v. Najjar, 1 N.J. Super. 208 (App. Div. 1949), affirmed 2 N.J. 208 (1949); Tonti v. Chadwick, 1 N.J. 531 (1949). Under this statute a city clerk, upon inspection of the application made on the form supplied by the Division of Vital Statistics and Administration has the authority, in the interest of the State, to determine whether or not a legal impediment to the proposed marriage appears to exist. Until it has been made "to appear before him that no legal impediment to the marriage exists" the applicant is not "legally free to marry again" and the city clerk is not authorized to issue a license.
In the instant case, before this court will direct the city clerk to issue a marriage license, the plaintiff's right to the license and the defendant city clerk's duty to issue it must be clear. Cf. Constam v. Darby, 95 N.J.L. 318 (Sup. Ct. 1921); Hugg v. Camden, 39 N.J.L. 620 (Sup. Ct. 1877). Under the facts of this case it would be most irregular for a court of this State to direct a licensing officer to issue a marriage license when an indictment and conviction for bigamy might result if the proposed marriage were contracted. See State v. Najjar, supra.
Judgment for defendant.