36 N.J. Super. 16 (1955)
114 A.2d 725
CORRINE L. BOND, PLAINTIFF-APPELLANT,
v.
ELMER H. BOND, DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued June 6, 1955.
Decided June 10, 1955.
*17 Before Judges GOLDMANN, FREUND and CONFORD.
Mr. J. Mortimer Rubenstein argued the cause for appellant (Mr. Milton Schamach, attorney; Mr. Rubenstein, on the brief).
Mr. Salvatore D. Viviano argued the cause for respondent.
PER CURIAM.
On June 19, 1950 plaintiff obtained a judgment in her separate maintenance action against defendant directing that he pay her $30 a week for her support and maintenance and that of the minor child of the marriage, beginning with January 6, 1950, and awarding custody of the child to plaintiff, with right of visitation in defendant. *18 Certain other relief, not significant to this appeal, was granted. Thereafter the court on July 6, 1950 awarded a writ of ne exeat against defendant, endorsed in the sum of $5,000. Defendant posted cash security the next day.
Four years later defendant moved to vacate the judgment, to discharge the writ of ne exeat and cash bond posted thereunder, and for certain other relief. On December 3, 1954 the court by separate orders (1) denied the application to vacate the judgment but discharged the writ, defendant having furnished a bond of $3,500 to insure the support and maintenance of his minor child, and (2) dismissed plaintiff's counter-motion that the $3,500 bond secure not only the payments for the support and maintenance of the child, but also her own support and maintenance. Plaintiff appeals.
A clear understanding of the matter requires a somewhat extended recounting of defendant's marital affairs.
Elmer Bond married Margaret Bond in 1924. Two children were born of that union, both now of age. In February 1935 he took Margaret and the children to Florida. The circumstances of their going there are somewhat vague. There is testimony that Elmer had been separated from Margaret some time before, that he had become involved with another woman, and that the purpose of going to Florida was to effect a reconciliation. About a month later he told his wife to return home to New Jersey with the children and that he would follow. She did so, but he remained in Florida, living with his parents in Miami Beach until late in April 1936. Several months after Margaret left, Elmer met Corrine L. Foy, a divorced woman. She knew he was married, and when he became interested in obtaining a divorce from Margaret she referred him to the attorney who had represented her in her own divorce proceedings. At the close of February 1936 Elmer instituted divorce proceedings in Dade County, Florida, based on Margaret's alleged extreme cruelty and desertion. Thereupon Margaret filed a complaint in our former Court of Chancery seeking to restrain him from proceeding with that action, and on April 2, 1936 she commenced a separate maintenance suit against him in *19 the same court. Elmer nonetheless went ahead with his divorce and on April 23, 1936 obtained a final decree by whose terms he was to pay Margaret $30 a week for the support and maintenance of herself and the two children of the marriage. Four days later he entered into a ceremonial marriage with Corrine at Tampa, Florida. Soon after the newly married couple returned to live in New Jersey, where they have been resident ever since. One child was born of that marriage.
Following his return to New Jersey Elmer and Margaret (and a named trustee) entered into a separation agreement whereby he was to pay her $30 a week for her support and maintenance and that of the two children. The separate maintenance action then pending between them was to be discontinued. Elmer also conveyed to her his interest in their former marital home, owned as tenants by the entirety. At the time of the agreement, Margaret did not know of the Florida divorce; in fact, she first learned of it in 1947 through Corrine, who told her of the second marriage and the child born of it.
Elmer and Corrine lived together as husband and wife in New Jersey until May 1947. Thereafter Corrine instituted a separate maintenance action based on Elmer's extreme cruelty, resulting in the judgment of June 19, 1950 and the writ of ne exeat already referred to. The judgment was affirmed on appeal. Elmer failed to comply fully with the terms of the judgment, with the result that Corrine instituted contempt proceedings. His defense was that he was obliged to pay support for his first wife and children and could not afford to pay both Margaret and Corrine $30 each. The trial court found him in contempt. On appeal the Appellate Division reversed. Bond v. Bond, 16 N.J. Super. 83 (1951).
At the time of that appeal there was pending an action instituted by Elmer against Margaret on February 7, 1951, whereby he sought to have their separation agreement reviewed and the $30 weekly payments provided therein reduced. Margaret filed an answer and counterclaim to set *20 aside the Florida divorce and for a divorce from Elmer on the ground of his desertion in March 1935. She then obtained an order making Corrine a party defendant. Corrine thereupon filed an answer and separate defenses denying the fraud charged as to Elmer's Florida residence and his subsequent remarriage, or that she had knowledge at the time of her marriage of any matrimonial injunctive order obtained by Margaret. She claimed that Margaret knew of her marriage to Elmer prior to the separation agreement of July 2, 1936 and was guilty of laches; that she was estopped from contesting the validity of the Florida divorce because of her knowledge of the divorce and remarriage; and that Elmer had a bona fide residence in Florida before instituting his suit for divorce against Margaret, so that the divorce decree was a valid judgment entitled to full faith and credit in the courts of New Jersey. Elmer elected not to prosecute the complaint or to offer any testimony by way of answer or defense to Margaret's counterclaim.
After a full trial the Chancery Division on May 4, 1954 dismissed Elmer's complaint for modification of the separation agreement, as well as Margaret's counterclaim for absolute divorce, and also Corrine's answer and separate defenses. Judgment was entered in Margaret's favor declaring Elmer's Florida divorce decree to be not entitled to full faith and credit and therefore without force and effect in New Jersey. Corrine did not appeal and consequently is bound by the adjudication in that proceeding which had the effect of invalidating her marriage to Elmer.
Soon after the judgment of May 4, 1954 Elmer moved (1) to vacate and set aside Corrine's separate maintenance judgment of June 19, 1950; (2) to discharge the writ of ne exeat and the cash bond posted thereunder; (3) to dismiss Corrine's pending application to hold him in contempt of court; and (4) to vacate and set aside a certain writ of execution and the sheriff's sale, report and deed thereunder. In addition to this relief he subsequently moved to have the court fix the amount he was to pay for the support and maintenance of his daughter by the marriage to Corrine. *21 The court had before it the affidavits filed by the parties, Elmer's answers to interrogatories, and his deposition taken in May 1953. In that deposition Elmer admitted he had always been a legal resident of New Jersey and never domiciled in Florida, and that the representations made in the course of the Florida divorce proceedings that he was a legal resident of Miami Beach, Florida, were untrue. The trial court thereupon (1) denied Elmer's application to set aside the judgment of June 19, 1950; (2) modified that judgment by allocating the sum of $15 for the support and maintenance of the child of the marriage, nunc pro tunc as of June 20, 1950; (3) discharged the writ of ne exeat and cash bond posted thereunder, Elmer having furnished a bond of $3,500 to insure the support and maintenance of his child by Corrine; (4) directed the clerk of the court to pay over the $5,000 posted under the writ of ne exeat, with interest, if any; (5) denied the application to vacate the writ of execution, and the sheriff's sale, report and deed; and (6) dismissed Corrine's application to hold defendant in contempt. By another order the court dismissed Corrine's motion to have the $3,500 bond secure not only the payments of support and maintenance for the child, but also support and maintenance for herself.
The opinion of the trial court is silent as to the reasons for refusing to vacate the separate maintenance judgment and for discontinuing, in effect, Elmer's obligation to make support payments to Corrine. We can only guess that the court's refusal to vacate the judgment was because of Elmer's unclean hands in obtaining the Florida divorce from Margaret, and that the failure to provide expressly for Corrine's support was grounded in the fact that there was no longer a valid and subsisting marriage between her and Elmer in view of the court's earlier adjudication of the invalidity of the Florida divorce. This latter conclusion would appear to have been based on Tonti v. Chadwick, 1 N.J. 531 (1949).
There can be no question whatever that under the circumstances and on the face of the record Elmer's divorce from Margaret was obtained in fraud of the courts of Florida *22 and of New Jersey. We are in complete agreement with the Chancery Division's earlier determination of the invalidity of that divorce, reflected in its judgment of May 4, 1954. Because of his unclean hands, Elmer was not entitled to any affirmative relief whatsoever at the hands of the Chancery Division when he sought, among other things, to have the separate maintenance judgment of June 19, 1950 vacated and the writ of ne exeat and cash bond posted thereunder discharged. On well-established equitable principles, he should have been left where the court found him. The separate maintenance judgment and the order awarding the writ of ne exeat should have been left intact.
We are not required to deal here with any rights which Corrine may claim to have under that judgment and order. That issue must await the time when it is clearly and squarely presented to us. The question involved in such a claim of rights is too important to be determined by way of dictum. Whether Corrine, whose marriage to Elmer is invalid because his Florida divorce from Margaret has been adjudicated a nullity, may insist that she is nonetheless entitled to be supported by him, presents an important question of public policy. Contrast Tonti v. Chadwick, 1 N.J. 531 (1949) (prior Mexican mail order divorce; separate maintenance denied because parties held in pari delicto) and Caldwell v. Caldwell, 298 N.Y. 146, 81 N.E.2d 60 (Ct. App. 1948) (also a Mexican mail order divorce case), with Krause v. Krause, 282 N.Y. 335, 26 N.E.2d 290 (Ct. App. 1940) (prior invalid Nevada divorce; second wife allowed support on theory of quasi estoppel). Compare Rooney v. Rooney, 54 N.J. Eq. 231 (Ch. 1896).
The Chancery Division orders of December 3, 1954 are accordingly reversed and the cause remanded for proper action in the light of this opinion.