37 N.J. Super. 371 (1955)
117 A.2d 316
IN THE MATTER OF THE PETITION FOR NATURALIZATION OF JOHANNA HELEN GREULICH.
Superior Court of New Jersey, Hudson County Court.
Decided October 7, 1955.
*372 Mr. Harry W. Vanderbach, for petitioner.
Mr. Herman Kaner, for the Government.
COOLAHAN, J.C.C.
A petition for naturalization was submitted by Johanna Helen Greulich, who is a native and national of Germany, and seeks naturalization under the general provisions of the Immigration and Nationality Act. There is no dispute as to the facts which are set forth hereafter.
The petitioner and Stephen Gayer were married in this State in 1928 and lived together in that union until 1931, when they separated. In 1934 the husband, while working in Florida, consulted an attorney in that state concerning a divorce. He was advised to secure a Mexican decree and referred to an attorney in El Paso, Texas, journeyed there, and without appearing personally in Mexico commenced the action from that location. The petitioner executed a voluntary consent of the waiver of jurisdiction before a notary public in New Jersey. She was not apprised of her husband's non-appearance in Mexico. In April 1935 the petitioner received a copy of the Mexican decree of divorce which is now in evidence, and at about that time learned that Mr. Gayer had remarried within a week of the date of the divorce. The petitioner married John Greulich in August 1938, over three years later, and continues in that relationship to the present time. That she remarried in good faith and in the honest belief she was legally free to do so is not in dispute.
The record discloses that petitioner had filed a previous petition in December 1942, which was denied without prejudice, the court having accepted petitioner's written motion for denial of such petition. On February 15, 1954 she filed the petition for naturalization which is presently before the court. The designated naturalization examiner has recommended the granting of the petition and the admission of petitioner to citizenship. The Acting Regional Commissioner, Southeast Region, has concluded that under the provisions *373 of the Immigration and Nationality Act the petitioner may not be naturalized.
The issue presented is whether the petitioner has established good moral character for the statutory period which began on February 15, 1949, in view of the provisions of section 101(f) (2) of the Immigration and Nationality Act (McCarren Act, 1952). Section 101(f), supra, in its pertinent part, is quoted herewith:
"(f) For the purposes of this Act  No person shall be regarded as, or found to be a person of good moral character who, during the period for which good moral character is required to be established, is, or was 
(2) One who during such period has committed adultery; * * *."
It has been held in this State that a Mexican mail-order divorce is a nullity. Tonti v. Chadwick, 1 N.J. 531 (1949). The designated examiner, however, has concluded that petitioner's second and continuing marriage relationship should not be deemed criminally adulterous thereby. It is contended that adultery must be criminal in kind in order to come within the proscribed norms of conduct under the McCarren Act (8 U.S.C.A., section 1101 (f) (2)).
In support of this view the examiner refers to the decisional law prior to the passage of the McCarren Act, maintaining, as he does, that it remains unchanged. By way of example there is cited Petition of Smith, 71 F. Supp. 968 (D.C. 1947), wherein there is found a situation paralleling in many respects the facts in the instant case. In commenting there upon the question of adultery occasioned by a second marriage after a mail-order divorce the court, 71 F. Supp., at page 973, stated:
"At the base of the petitioner's difficulty lies the subject of divorce, fraught as it is with great confusion and uncertainty in these United States and almost totally lacking in unanimity among them. Through it all is woven the ecclesiastical strands of a sacrament and as well the temporal strands of a contract. Looking then to the character of the man, it is noted that he has been governed by a natural desire for the marital relation not altogether from the sex urge but from the yearnings for a home life. These honorable, impelling *374 motives did not carry him so far however, as to desire to fly in the face of the social amenities nor to knowingly consent to a conflict with the law. Evidence of this is found in his resort to legal advice where he would be advised not only as to the law but also as to the implications of a Mexican divorce. It appears that he acted on the advice of counsel and whether or not his counsel was in error on the close points involved, he was himself satisfied from the advice received that he was free to proceed as he did. Before one can be said to be of immoral character, a wrongful intent must be found. I find no intent in this petitioner either to violate the law or to violate a moral precept."
The foregoing decision was rendered prior to the passage of the McCarren Act in December 1952. However, both the examiner and petitioner's counsel are of the opinion that the act does not introduce any new element into our immigration law but is merely a codification of it.
The contrary recommendation of the Regional Commissioner is succinctly set forth in his findings and recommendation as follows:
"* * * (c) That the petitioner and John Greulich, a man not her husband, have lived as husband and wife though not legally married, since at least February 15, 1949, the beginning of the statutory period involved in this case, while the petitioner was still married to Stephen Gayer, and thus committed adultery under the laws of the State of New Jersey, although she entered into such relationship in the belief that she was properly married to John Greulich on September 27, 1938.
(d) That the petitioner has committed adultery within the meaning of Section 101 (f) (2) of the Immigration and Nationality Act, during the period she is required by law to establish good moral character under Section 316 (a) of that Act, and therefore cannot be regarded as or found to be a person of good moral character during the required period."
It is the Commissioner's view that the Congressional intendment in the pertinent section of the McCarren Act was the denial of good character to a person who "has committed adultery," and this whether the adultery be denoted criminal or civil in nature.
Leaving aside for the moment the divergency of opinion found within the Immigration Department itself, it might be well to consider the plight of the petitioner. She has *375 dwelt in this country and community for 40 years. Her moral character in her community has been attested to by the chief law enforcement officer of that community and by the pastor of the church which she attends. There is no divergence of opinion between the Regional Commissioner and the designated examiner as to her eligibility for citizenship aside from the status of her present marriage.
The basic issue in my view is this: Are we to shut the door in the face of this petitioner, who now stands on the very threshhold of citizenship, by reason of a defect in the marriage which she contracted in admitted good faith over 17 years ago? Are we to stigmatize the lives of a couple who have, according to all of the testimony at the hearing, dwelt in their community in an exemplary and respectable manner for 17 years?
I am constrained to the view that the petitioner's case is not tantamount to the adultery proscribed in the standard of morality established under the McCarren Act. I feel certain that the safeguards contained in that act apply to flagrant and clear cases of adulterous conduct rather than to innocent situations retroactively rendered null and void by court decisions. To hold otherwise would interject into the McCarren Act a harshness which is neither demanded by the wording of the act nor by the prior decisional law on our immigration statutes.
It is the court's opinion that the petition of Johanna Helen Greulich be granted and that she be admitted to citizenship on taking the oath of allegiance proscribed by section 337 of the Immigration and Nationality Act.